HARRY BERGMAN, Appellant, v. SOPHIE R. BERGMAN, Appellee; SOPHIE R. BERGMAN, Cross Appellant, v. HARRY BERGMAN, Cross Appellee.

199 So. 920

En Banc

Opinion Filed June 11, 1940

As Modified August 2, 1940

*Redfearn & Ferrell,* for Appellant;

*Price & Price,* for Appellee.

TERRELL, C. J.—In October, 1938, appellant as complainant filed his bill of divorce against appellee alleging extreme cruelty and frequent indulgence in a violent and ungovernable temper. The bill also alleged that subsequent to their separation, they entered into a separation agreement by which appellant agreed to pay appellee $30 per week for the support of herself and their minor child. The separation agreement provided that it would be terminated on either party obtaining a divorce or by failure to make the payments therein required or by failure to comply with the provisions set forth therein. The bill prayed for a final decree of divorce, for termination of the separation agreement and for other appropriate relief.

In November, 1938, defendant filed her petition praying that complainant be required to comply with the terms of the separation agreement and to pay her the sum of $500 as suit money and a like amount as temporary attorneys' fees. The chancellor decreed payment of half the amounts prayed for as suit money and temporary solicitors' fees.

In February, 1939, defendant filed her answer to the bill for divorce in which she denied guilt of any acts constituting the grounds relied on. As to the separation agreement, she tendered the defense that the provisions for termination would not be satisfied by a divorce secured in Florida unless

obtained on the ground of adultery. She also alleged a default in payment of the amounts required by the separation agreement and prayed that complainant be required to comply with the terms thereof, that his prayer for divorce be denied and that he be required to pay her further sums for suit money and attorneys' fees. On final hearing, the chancellor granted the prayer for absolute divorce, required specific performance of the separation agreement, entered a money judgment in favor of the defendant for $1,450 and decreed that she be paid $250 additional solicitor's fees. The complainant appealed from all the final decree except that part granting the divorce and the defendant filed cross assignments of error directed solely to the decree of divorce.

On the main appeal, five questions are argued, the substance of which is that the following elements of the final decree should be reversed: (1) that part requiring specific performance of the separation agreement, (2) that part decreeing a money judgment in favor of defendant for $1,450 and (3) that part decreeing additional attorneys' fees be paid appellant.

This contention as to grounds one and two is based on paragraph seven of the separation agreement which provides in substance that said agreement shall be automatically terminated by either party obtaining an absolute divorce from the other. Cross appellant contends that said provision does not apply in this case because the separation agreement was made in New York where adultery is the only ground for an absolute divorce, that the separation agreement contemplates a divorce in New York and is not satisfied where the divorce is granted in Florida for extreme cruelty and frequent indulgence in a violent and ungovernable temper.

We are not impressed with this contention. In our view, the separation agreement must be given a realistic interpretation based on its plain, every-day meaning as conveyed

by its terms unless the context unmistakably shows that the parties intended that it be given some peculiar or covert interpretation not readily apparent on its face. An "absolute divorce" granted under the laws of Florida would be so recognized in New York and we think satisfies the terms of the separation agreement. The rules applicable to the construction of separation agreements are no different from those governing the interpretation of other agreements.

When the final decree of divorce was entered, the separation agreement was at an end. It left the court free to decree as he thought best as to custody of the minor child and to require such amounts to be paid for the support of the minor child as he deemed proper. Bonte v. Bonte, 114 Misc. Rep. 321, 187 N. Y. S. 321; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933; Shurman v. Shurman, 148 N. Y. S. 947.

We find no error in that part of the final decree granting $250 additional attorneys' fees for cross appellant's counsel. She was entitled to representation, is not shown to be possessed of funds to employ counsel and the amount is not charged to be unreasonable.

The cross appeal is directed solely to the decree of divorce which was predicated on the ground of extreme cruelty and habitual indulgence in a violent and ungovernable temper. The question presented is whether or not facts were alleged and proven which constitute either or both these grounds.

The bill of complaint categorically alleges that defendant would continually nag, fuss at, and display a violent and ungovernable temper toward complainant on an average of three or four times a week and that said displays would last from an hour to days, during which times defendant would enact scenes, would low-rate and berate complainant in the presence of his friends, relatives, and neighbors, would throw household objects at him and by said means kept

complainant in such a state of unrest, apprehension, and deplorable mental condition that his health became impaired, he lost fifteen or twenty pounds, and was forced to seek medical attention.

The evidence supports these allegations and in addition thereto shows that the marital status of the parties was unhappy and burdensome and that it was a constant source of embarrassment to both. It also shows a complete lack of coöperation between the parties and that when defendant was in one of her tantrums, she would address defendant as "damn fool," "bastard," "dirty son of a bitch," and other appellations of like flavor. She would then belittle the complainant and order him to leave home.

In Diem v. Diem, decided January 5, 1940, we held that any habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other is sufficient to constitute extreme cruelty as a ground for divorce. We further held in the latter case that extreme cruelty as ground for divorce is relative. What constitutes it may be determined by the degree of one's culture, his emotions, nervous reaction, or moral sense. Any course of conduct which meets this test is sufficient to warrant relief from the marital bonds.

It is a significant fact that when domestic cyclones sweep through the marital corridors and the spouses begin calling each other names, regardless of reputed social status they invariably dip their tongues in lecherous venom, plummet like a skyrocket to 'damn fool" or some species of "son of a bitch" and rise from that. There is something about domestic infelicity that often inflicts the victim with a nostalgia for the vulgar and the filthy. As we said of extreme cruelty, the effect of such epithets is relative. Around a "skin game" and in some other sectors of the social structure, it is said that they are terms of endearment. There is

another strata of the social structure which extracts its vitamins from bouillon and split peas, the males of whom may be so dubbed without danger of kindling a fracas, but in those areas of the country where Brown's Mule Tobacco and Sweet Scotch Snuff are tops in the pabulum chart, to address one of the male species as "son of a bitch" is nothing short of a back-handed invitation to a nose bradding. I know of no salutation that will make the bristles rise faster or that is considered so humiliating and degrading.

For one spouse to constantly berate the other, assault him with household articles, and tag him with the epithets in the manner here charged is so out of harmony with the essence of the marital status that it must cause mental torture and tend to dethrone the reason of one with the orthodox concept of that relation. We are conscious of the fact that social conventions sometimes undergo abrupt changes and that while the law is nothing more than a rule for the conduct of such conventions, it never precedes but always follows them. If the time arrives that it is considered good taste and a token of affection for one spouse to greet the other with the epithets detailed in this opinion instead of by the time-worn practice of an embrace and an ellipse then the charge involved here may not be ground for divorce but until that time arrives and the grounds for divorce are changed, we cannot so construe the law.

Cross appellant contends that the instances in which she berated and abused complainant were nothing more than infrequent or spontaneous outbursts of passion and are not sufficient under the decisions of this Court on which to predicate a divorce on the ground of extreme cruelty.

There is some conflicting testimony as to some of the charges relied on but there is ample showing in the record to support the chancellor's decree on this point.

It follows that on the direct appeal, the final decree is

affirmed in part and reversed in part. On the cross appeal, it is affirmed.

Affirmed in part. Reversed in part.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., agrees to conclusion.

JUSTICE BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.