J. W. WILSON, Appellant,

v.

Josephine G. WOOLF, Appellee.

No. 15568.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 10, 1954.

Rehearing Denied Jan. 7, 1955.

Willis & Willis and Hart Willis, Jr., Dallas, for appellant.

Lawrence W. Vance and Geo. K. Holland, Dallas, for appellee.

**MASSEY, Chief Justice.**

Plaintiff, a divorced wife of the defendant, sued on contract. Allegations included the contention that defendant contracted to pay her $150 per month in the property settlement agreement, based upon considerations incident to division of the community property of the parties and based upon other benefits which had accrued to defendant from the receipt and use of plaintiff's property. The contract had been incorporated into the decree of divorce as a part of an agreed property settlement incident thereto. The defendant defaulted in the payments so contracted to be paid. Plaintiff deferred any legal action to enforce the contract for many years, but eventually brought a suit. The trial court entered judgment for plaintiff for all payments within four years next preceding date suit was filed and for subsequent payments accrued to date of the filing of plaintiff's amended petition upon which trial was held. The defendant appealed.

Judgment affirmed.

An interesting chain of circumstances is involved in the history of the facts producing the dispute which culminated in this suit. The plaintiff was for a period of time the happy wife of the defendant. The plaintiff inherited money and acquired other funds by gift. She advanced certain amounts therefrom to the defendant, under circumstances whereby there was a relationship of debtor and creditor between the parties. Then, by January 30, 1935, while the parties were legally married, their bliss was permanently interrupted. The parties separated and were never reconciled. On said date the parties formally executed an agreement in which the defendant acknowledged his indebtedness because of the advancement of funds by his wife, and because of which he deeded certain real estate to her, and assigned and transferred other property to her, after which (defendant still being indebted to the plaintiff), defendant "covenanted and contracted" with plaintiff that in lieu of the accounting and settlement of the community property, and as consideration to plaintiff for all of such

community property, which defendant retained, he covenanted and bound himself to pay to her the sum of $150 per month, on or before the first day of each succeeding month to follow, for the period of her natural life. The defendant further covenanted that the contract should be a continuing contract, and that should he fail to make any of such monthly payments, the plaintiff should be entitled to sue, upon her election, for any arrears payments and that in the event she did so that her suit would not invalidate the purpose of the contract and defendant's obligation to make payments each month as agreed. The contract ended with the covenant and statement that it should be construed as a settlement of the separate property rights of both parties.

Approximately eleven months later, by agreement, the parties were divorced, and the decree contained the contract and agreement aforesaid as part and parcel of the agreed property settlement pursuant thereto.

Eight or nine months later, by reason of the fact that the defendant had defaulted in a part of the agreement not set out as material hereto, the defendant executed a supplemental contract whereby he assigned his personal loan business to his wife as security for his liquidation and bringing current all of his obligations of the former contract. It appears that the consideration for this subsequent agreement was "for considerations shown me (the defendant) by Josephine G. Wilson (the plaintiff) in the delay of meeting the requirements of said contract * * *." It also appears that because of such considerations the defendant agreed: "I hereby make this instrument a part of our contract and agreement entered into on January 30th, 1935."

Disregarding any question as to whether the defendant complied with his promises relating to other portions of his agreement, he fell behind with his payments of $150 per month after a relatively short period of time. The plaintiff made demand after demand upon him for such payments, but several years passed during which the defendant did not make them. It seems rather obvious that he fell upon evil times financially and that he was rather beset by cumulative indebtedness. The plaintiff did not bring any suit because of defendant's failure to pay, but she did continue to claim the payments of him. Then, on December 28, 1942, the defendant wrote to plaintiff, as follows:

"Dear Josephine:

"Pursuant to our understanding and agreement of a number of months ago, I enclose herewith my check No. 1058 dated January 2, 1943 on the Texas Bank & Trust Company in the amount of $76.25 which constitutes a part of the understanding and agreement agreed upon at that time, and which summed up in a few words amounts to the following:

"First, your acceptance and endorsement of this check will be prima facie evidence that you have accepted the further following contract or agreement to-wit:

"First, this leaves a balance of $1,000.00 which I agree to pay or liquidate at the rate of $50.00 a month beginning on or before February 15, 1943, and a like amount of $50.00 to be paid the 15th of each succeeding month until the aforesaid $1,000.00 is paid.

"Second, that upon final payment of the aforesaid $1,000.00 it is hereby fully understood and agreed that same shall not only constitute full and complete payment of the aforesaid amount, but when the last payment is made it will be accepted by you as full and complete payment of any and all previous claims that is covered by any and all previous court litigations styled in any of the courts of this county or any other county in the State of Texas by and between Josephine G. Wilson vs. J. W. Wilson.

"This check is tendered you as initial payment of the above contract or agreement, and your acceptance of same shall be so construed."

A check for $76.25 accompanied the letter, post-dated January 2, 1943. Immediate-

ly subsequent to receipt of the letter the plaintiff caused her attorney to write to defendant denying that there had been any settlement of any kind, but that all the obligations due by defendant under the prior agreement, or agreements, were declared due and payable. The defendant sent plaintiff another check for $50 about the first of February. Plaintiff held both checks for a short period and then caused her attorney to write the defendant again. This letter was a similar import, though it added the information to defendant that the plaintiff was going to cash the checks she had received and apply the proceeds to the indebtedness already accrued and due. On May 21, 1943, the plaintiff wrote the defendant a personal letter in which she asserted that the checks were being received and cashed and the proceeds applied to the obligation of the prior agreement, and that she contended there was no settlement as implied by defendant's letter of December 28, 1942. It might be noted that none of the checks sent by defendant and received by plaintiff contained memoranda on the face of the checks themselves to the effect that an endorsement constituted an acknowledgment of any kind, but each of them was acccompanied by a letter to the effect that the checks were delivered "in conformity with the contract and agreement made in 1942", or words of similar import, with a sentence added in each instance, as "This now leaves a balance of $850.00", or with an amount stated as leaving a balance reduced $50 from each balance stated in the preceding letter. The last letter dated September 19, 1944, stated that the $50 enclosed "is the balance due on the old contractual agreement of some months ago, and which completes same as full payment thereof."

Following the occurrence of the aforesaid the defendant did not make any further payment to the plaintiff, and plaintiff did not file suit for over seven years. She did file suit on December 15, 1951. While the relief sought was rather broad, we are here only concerned with the relief awarded by the judgment. It was the defendant who appealed. The judgment awarded plaintiff specific performance of the payments during the four-year period immediately preceding the date suit was filed, by way of a judgment for indebtedness, plus interest at six per cent per annum computed upon each $150 payment from the date of defendant's defaulted payment to date of the judgment. It likewise awarded the same thing as to defaulted payments through March, 1953. The amended petition of the plaintiff was filed in that month and sought this additional relief. It was upon this amended petition that plaintiff went to trial. Judgment date was March 2, 1954. The total amount of the judgment, including the interest, was $11,458.62.

It is obvious that the payments totalling $1,076.25, begun by the check of the defendant dated January 2, 1943, under and by virtue of the settlement contract he claimed in his letter will comprise a phase of defendant's defensive theory necessary to be considered only in the event we determine that the trial court correctly held the original contract of 1935 binding upon the parties and obligated the defendant to pay $150 per month to the plaintiff for the remainder of her life. Therefore we will first consider the validity of such agreed obligation, and whether it is binding upon the defendant—in disregard of any question posed as result of the purported agreement of settlement in 1942.

The defendant contends that the material phase of the original agreement embodied in the judgment, being the phase here in question, was void as contravening the laws and public policy of the State of Texas. He asserts that it was a judgment awarding permanent alimony, and not a property settlement award. He cites the case of McBride v. McBride, Tex.Civ.App.Austin 1953, 256 S.W.2d 250, as authority for his contention. That case was one where a divorced husband went into the district court which had granted the divorce decree and sought a modification thereof in so far as it provided that he was bound and obligated to pay to his divorced wife an amount equivalent to one-third of all his monthly income (over his child-support payment) for her support and maintenance until such time as she re-

married or until such time as the child of the couple reached the age of twenty-one years. Reference to the opinion discloses that there was no evidence of any indebtedness on the part of the husband to the wife or her estate as of the date of the divorce, that the money was not payable from any existing property, and was not referable to any property which either spouse may have owned or claimed. It also appears from the other terms of the decree, viewed in light of the evidence, that there was no consideration for the husband's agreement, or at least that there was no consideration having substance at law, for such provision by the judgment. In that case there was a contract between the parties, which contract was incorporated into the judgment. The same thing occurred in the case of the present instance. However, in the McBride case the relief sought was for a modification of judgment, while in the present instance we have a suit upon contract, because of which and based upon which a personal judgment is sought. In the McBride case the Austin Court of Civil Appeals held that despite the contract the trial court had no jurisdiction and was without authority to grant permanent alimony as it did in its judgment, and that the attempted award as by a judgment was against the public policy of the state. Of course, the Austin court concluded as a matter of law that under the circumstances the contract actually provided for payment of alimony subsequent to divorce, but that alone was not the premise of its holding. Its holding was that the part of the judgment which decreed performance of such contract was void as a judgment, as being beyond the authority of the trial court.

Certainly the Austin court's holding can be differentiated from a suit such as the one at bar, where the plaintiff sued upon contract. We cannot perceive where the fact that the contract met the approval of the trial court and was repeated in the court's decree has aided the defendant. The defendant re-affirmed the original contract in the supplemental instrument executed by him seven or eight months after the time of the divorce decree. The contract stated that the community property, or at least most of it, remained in the hands of the defendant, because of which and in lieu of any accounting as to which the defendant contracted with the plaintiff to pay her $150 monthly. At the most the defendant was entitled to plead and prove facts which might entitle him to an avoidance. Perhaps he might be entitled to avoid his obligation, but it is not per se a void one. This burden of avoidance was not discharged by the defendant and he never offered any evidence which even tended to controvert the truth of the promissory agreements of the contract or to attack the legality of the consideration because of which he made them. Neither did he plead a case predicating any such character of proof.

That part of the judgment which was based upon the agreement of the parties is governed by the laws relating to contracts, rather than the laws relating to judgments, and the judgment which was entered by agreement when they were divorced in the latter part of 1935 will be interpreted like a contract between the parties, the judgment itself becoming a contract. Kennedy v. Kennedy, Tex.Civ.App.El Paso 1954, 267 S.W.2d 245, writ ref., n. r. e.; Plumly v. Plumly, Tex.Civ.App.San Antonio 1948, 210 S.W.2d 177, error dismissed, and authorities therein cited. Therefore, in the present instance we see no occasion to construe the suit of plaintiff as any different from an ordinary suit on contract for specific performance. The defendant missed monthly payments he agreed contractually to pay. It was for the enforcement of these payments the plaintiff brought suit. This would be true whether the suit be considered as brought upon the contract or upon the judgment entered at time of the divorce.

Since plaintiff had the right to bring a separate suit against the defendant for each default of a contractual monthly payment as it accrued, and since she could not bring such a suit before the date arrived for it to be paid, her right of action was controlled by the four-year statute of limitations, Vernon's Ann.Civ.St. art. 5529. Under the circumstances of this case, in view

of the character of written contract sued upon, there could be no defense of laches within such a four-year limitation period because of a delay in institution of suit by plaintiff. Any delay of less than four years could not have been a delay which worked a disadvantage to the defendant. In the present instance, because of the defendant's limitations pleading, the trial court denied the plaintiff any relief for installments due for more than four years. Of this she does not complain. So, in view of what we have already said about the necessity and propriety of treating the divorce judgment as we would a contract, coupled with the fact that as to the property settlement feature it was a consent judgment incorporating the continuing obligation agreed upon in its context, defendant's plea of limitations as applicable to judgments was without merit or application. Indeed, it is readily apparent that a writ of execution issued on the judgment within the time provided therefor would have availed nothing and would not have served any purpose.

The defendant contends that his own breach of contract in that he ceased to perform under it and the judgment is of avail to him as a defense to plaintiff's suit. The contention has no merit. The plaintiff never did elect to treat the contract as breached. Her suit belies such, as it is in the nature of a suit for specific performance. She could have treated the contract as breached and brought suit for the breach, in which event she would not have been limited to recover the debt until only the date of her last filed pleading upon which she went to trial. Had the suit been one for breach she could have proven her life expectancy and perhaps obtained a judgment for some amount premised upon her probable future loss because of the defendant's positive and absolute refusal to perform. Sims v. Falvey, Tex.Civ.App. Beaumont 1950, 234 S.W.2d 465, writ ref., n. r. e.; Texas Digest, Contracts, ▮.

We therefore conclude that plaintiff's recovery by the judgment entered in this case was proper.

This leaves for our consideration the question of whether the events of 1942, 1943 and 1944, pursuant to which the defendant paid the plaintiff $1,076.25, operate to relieve the defendant. He contends that there was an accord and satisfaction and that the trial court erred in concluding that there was not. He contends further that his letter of December 28, 1942, constituted a contract, and his performance of his agreement therein recited, in the delivery of checks totalling $1,076.25, and plaintiff's acceptance and retention of such checks and their proceeds amounted to a release in full of him and a legal and equitable estoppel operative against the plaintiff, and that the plaintiff had waived her rights.

Initially, it appears to us that under the rules of construction, the trial court would have been perfectly at liberty to construe the defendant's letter of December 28, 1942 (to the plaintiff) as having been a contract of release, but that the subject released was the accrued indebtedness of defendant to the plaintiff under the contract and judgment claimed by her "previous" to the date of the letter. The defendant prepared the letter, and any construction of its terms and provisions would be against him. He spoke only of "previous" claims covered by "previous" court litigations between them. Had the trial court done so, as perhaps he might be constructively considered to have done, it would make no difference to the judgment entered in this case, for the defendant's last payment of $50 upon such a contract was delivered over seven years prior to the date plaintiff filed suit.

Obviously, however, both the plaintiff and defendant thought that what the defendant intended to do was to extinguish all his obligations, future as well as past, by writing the letter and mailing the checks. The evidence is plain that the plaintiff refused to consider the payments made in 1943 and 1944 as anything except credits upon the defendant's prior indebtedness resultant from his failure to perform as per his contract. Upon any fact issue the trial court was entitled to conclude, as he did, that there was no release or accord and satisfaction and no contract at all whereby defendant extinguished any of his liability

through his procedure. So we have a clear-cut question, to wit: "Is a person to whom a second person owes a liquidated obligation to pay money foreclosed by law from prosecuting a suit for the collection of such total amount owed merely by reason of the fact that he cashes a check for a lesser amount received by him from the debtor along with a letter from such debtor which states that the debtor will consider the entire debt extinguished should the creditor cash the check?" We believe that the law is settled in Texas that such a creditor is not defeated in such an instance, or even in an instance wherein the check itself recites the same thing. An accord and satisfaction is considered a substituted contract complete within itself and it therefore must be based upon a consideration the same as any other contract. Courts are not concerned with the adequacy of the consideration in the case of unliquidated demands so long as it is paid and accepted as such, but in the case of liquidated rights to compensation where the full compensation is not paid and no additional or substituted consideration is shown no accord and satisfaction results. Minchen v. Vernor's Ginger Ale Co. of Houston, Tex.Civ.App.Galveston, 1946, 198 S.W.2d 613, citing Turner v. Pugh, Tex. Civ.App.Amarillo, 1945, 187 S.W.2d 598, in which the common-law rule applicable to Texas is discussed and the criticisms noted, and other authorities are cited; Texas Digest, Accord and Satisfaction, Restatement of the Law, "Contracts", examples under Sec. 417 and under Sec. 420. The defendant contends that there was accord and satisfaction because there was a dispute as to how much obligation he had to plaintiff at the material time, in 1942, and this was true as to certain other provisions of the original contract and judgment unrelated to the provisions for $150 per month. But the realm of disputed obligation was not reached, for there was no dispute between the parties that the $150 per month provided to be paid was in arrears and was then liquidated for a sum greatly in excess of the $1,076.25. We therefore are of the opinion that since there was not a payment of the indisputed amount already liquidated on a separable obligation of the agreement and since the defendant did not show any additional or substituted consideration, there was no accord and satisfaction. Even had the defendant paid every cent of the amount then due and liquidated, there would have been no accord of the defendant's future continuing obligation. See 1 Tex.Jur., "Accord and Satisfaction", p. 266, sec. 26.

 The allowance of interest on each of the payments contracted to be paid beginning as of the date the defendant defaulted in payment was proper. The trial court's action in this regard was in obedience to statute. See V.A.T.S., Article 5070.

Judgment is affirmed.