[Civ. No. 23016. Second Dist., Div. Two. Aug. 18, 1958.]

MARY ANN COCHRUM, Respondent, v. WILLIAM
TRAVIS COCHRUM, Appellant.

William C. Stein for Appellant.

James A. Watkins for Respondent.

HERNDON, J.—Defendant husband appeals from an order entered on August 22, 1957, granting plaintiff's application for a modification of the alimony provision of an interlocutory decree of divorce. The order increases the alimony award from $1.00 to $50 per month. Defendant (appellant) states that: "The sole issue presented by this appeal is whether or not a trial court may order the payment of alimony by the husband to the wife in a case where the parties had entered into a property settlement agreement in writing in which the wife specifically waived alimony, following which a default was entered against the husband and the matter was tried as a default, the husband not appearing."

Chronologically stated, the operative facts are as follows:

On April 15, 1957, plaintiff filed her complaint for divorce on the ground of cruelty, alleging: a marriage of some 13 years duration; that there were two children of the marriage, and that the community property consisted of two parcels of real property, two automobiles, bank accounts, and numerous other items of personal property. In addition to dissolution of the marriage plaintiff sought by the prayer of her complaint that she be awarded the community property, the permanent custody of the two children and reasonable attorney's fees; that "[d]efendant be ordered to support plaintiff and the minor children, the amount and times of payment to be fixed by the court"; and that she be awarded her costs of suit and "such further relief as the court deems just."

On April 26, 1957, the parties executed a property settlement agreement which had been prepared by plaintiff's then attorney. This agreement recites the pendency of the divorce action and the "mutual desire" of the parties "to effect a final and complete settlement of their respective property rights with reference to their marital status and to each other, and to effectuate such final and complete settlement they agree particularly as follows: . . . In order to settle the issues as to property interests as raised in the pleadings on file in said lawsuit without the necessity of further litigation as to said property interests, the parties are entering into this agreement with the expectation that said agreement will be presented in evidence to the Court for its approval. . . ." Following the above quoted language there are detailed provisions for the division of the numerous items of real and personal property. Defendant agreed to maintain certain life insurance for the benefit of the children and to pay to plaintiff the sum of $75 per month for the support and maintenance of each of the two children such payments to continue until the children attained majority, married, or became self-supporting.

The following provisions also appear: "Each of the parties in consideration of the agreement of the other herein expressed hereby waives, releases and relinquishes to the other all claims each may now have, or might hereafter otherwise acquire against the other, as husband and wife, or otherwise, arising out of the marital relation. Each party does hereby release, relinquish and waive to the other any and all claims he or she may now have, or may hereafter acquire against the other, for support and maintenance, or otherwise. . . . Wife specifically releases husband from any balance which may be due as

temporary alimony and child support because of an order of court heretofore made on or about April 25, 1957 . . . and each party has been independently advised by his or her attorney as to the legal effect of executing this agreement. This agreement may, subject to the court's approval, be made a part of any decree of divorce between the parties.''

Request for entry of default was filed on May 1, 1957, and on May 29, 1957, the cause was tried as a default. At the conclusion of the hearing, the court granted plaintiff an interlocutory judgment of divorce and approved the property settlement agreement except for the provision as to alimony. The court ordered a division of the community property, the payment of child support and attorney's fees, maintenance of life insurance, etc., all in strict accordance with the terms of the agreement, but departed therefrom in ordering defendant to pay to plaintiff for her support and maintenance the sum of $1.00 per month. The interlocutory judgment of divorce entered on June 11, 1957, approves the property settlement agreement ''excepting for the provision as to alimony'' incorporates *in haec verba* the provisions of the agreement relating to the division of property, the payment of attorney's fees and debts, child support, etc., and further orders the defendant to pay alimony in the sum of $1.00 per month.

On July 26, 1957, plaintiff filed her application for a modification of the interlocutory judgment to increase the alimony payments from $1.00 to $225 per month, and also to require defendant to pay to plaintiff the sum of $350 to cover the medical and hospital expenses ''pertaining to the birth of [an] expected baby'' and ''upon the birth of said baby, defendant shall pay to plaintiff the sum of $75 per month, commencing on the 1st day of the month following the birth of said baby and continuing monthly thereafter.'' In her affidavit filed in support of this application, plaintiff alleged: that at the time the interlocutory judgment of divorce was granted, she had employment and was in a position to support herself; that unknown to her she was then pregnant; that by reason of her pregnancy she had not been able to work and had not been able to earn the money she had expected; that she had incurred additional medical and other expenses which she had not anticipated, and that the defendant was the father of the expected child.

An order to show cause was issued upon this application, returnable on August 22, 1957. The defendant filed an affidavit in response to the order to show cause in which he denied

generally the allegations of plaintiff's affidavit with respect to her pregnancy and his paternity of the expected child.

The order to show cause was heard by a court commissioner who made findings with respect to the employment and earnings of the parties. The commissioner also found that plaintiff was then pregnant and would be unable to continue her employment as a result thereof. The findings recite a stipulation that the issue of paternity be continued until after the birth of the unborn child. Upon these findings, the commissioner recommended an order requiring defendant to pay to plaintiff $50 per month for her support, to pay an additional amount to plaintiff's attorney for services rendered in connection with the modification proceedings and to pay the necessary and reasonable medical and hospital expenses for plaintiff's confinement as the same became due. The issue of paternity was expressly left unadjudicated. The order as recommended was signed by the judge and duly entered.

On this appeal defendant challenges only that portion of the foregoing order which requires him to pay alimony in the sum of $50 per month. In his opening brief he declares that he knew nothing of the nominal alimony award contained in the interlocutory judgment until after the modification proceedings were instituted and that it was at the hearing of the latter proceedings that he "was for the first time represented by an attorney."

It may be noted that the time within which an appeal from the interlocutory judgment might have been taken expired after plaintiff filed her application for modification but before the hearing thereon. No appeal has been taken from the judgment nor has either party sought any relief therefrom under the provisions of section 473 of the Code of Civil Procedure. It does not appear that any proceedings, other than those above recited, have been taken by either party to set aside the agreement or to obtain relief from the judgment.

█ We have concluded that the alimony provision of the interlocutory judgment is void by reason of facts which not only appear upon the face of the record but are expressly admitted by both parties. It follows of course that the modification order is without foundation and is likewise void.

In the instant case, precisely as in *Craft* v. *Craft*, 49 Cal.2d 189 [316 P.2d 345], defendant allowed his default to be taken in justifiable reliance upon an agreement wherein the plaintiff had clearly and definitely waived and renounced any and all claim to alimony. As aptly stated in Craft at page 192: "The

stipulation entitled him to believe that the issue of alimony had been eliminated and that no support money would be awarded in the absence of proper notice to him. Under these circumstances he had a right to rely upon the stipulation, and it is apparent that he did so rely when, in accordance with the agreement, he failed to answer the complaint and permitted the case to be heard as a default matter. In the absence of proper notice to defendant or other reason why he should have anticipated that the stipulation would be disregarded, the court had no jurisdiction to include an award of alimony in the interlocutory decree.'' ██ The following further language from the Craft decision (p. 193) is directly pertinent:

''While a defendant must ordinarily anticipate an award of alimony in an action for divorce, he should not be required to do so where there is a stipulation waiving that relief, and the existence of such a stipulation precludes the court from awarding support money in the absence of proper notice to the defaulting defendant. ██ Even if we were to assume that at the time of granting an interlocutory decree the court might, under some circumstances, disregard an agreement of the parties with respect to support and maintenance and make an award of alimony in derogation of the agreement (see *Adams* v. *Adams,* 29 Cal.2d 621, 624-625 [177 P.2d 265]), it could not do so in the absence of sufficient notice to a defaulting party. (For suggested procedure, see *Darsie* v. *Darsie,* 49 Cal.App.2d 491, 494-495 [122 P.2d 64] ; *Eddy* v. *Eddy,* 64 Cal.App.2d 672, 673-674 [149 P.2d 187].)''

The sum and substance of plaintiff's effort to distinguish the Craft case is contained in the following quotation from her brief: ''Respondent respectfully submits that *Craft* v. *Craft* is not controlling on the case at bar. Respondent respectfully submits that the Court in *Craft* based its decision on a formal Stipulation filed with the Court wherein wife waived alimony, and on the lack of a prayer in her complaint for alimony. In the case at bar, no such Stipulation as found in the *Craft* case is present, and the plaintiff's complaint specifically prays for alimony.''

We find no substance in the suggested distinctions. The instrument involved in Craft differed from the instant agreement only in form and that difference is inconsequential. Although the instant agreement is not given the title ''stipulation,'' its true and substantial character as a stipulation (clearly designed and intended to limit and define the relief which plaintiff would seek and obtain in the pending action)

conclusively appears from the recital of the pendency of the action (identified by title and docket number) and the further recital as follows: "In order to settle the issues as to property interests as raised in the pleadings on file in said lawsuit without the necessity of further litigation as to said property interests, *the parties are entering into this agreement with the expectation that said agreement will be presented in evidence to the Court for its approval.*" (Emphasis added.)

The instant agreement is no less formal than that involved in Craft and the waiver of alimony is expressed in terms of equal clarity. Each instrument incorporated the terms of a complete property settlement.

█ Equally without substantial effect is the fact that the complaint in the instant case contained a prayer for a support order whereas in Craft the complaint did not pray for alimony. It is clear from the Craft decision and other decisions therein cited that a prayer for general relief affords a sufficient jurisdictional basis for an award of alimony in a divorce case. It being settled that the lack of a specific prayer for alimony afforded no basis for a collateral attack on jurisdictional grounds, the lack of jurisdiction necessarily resulted from the terms of the stipulation which, said the court, "amounts to an agreement to remove that issue from the case."

Moreover, it would be utterly artificial and unrealistic to give substantial effect to this distinction. The practical effect of the stipulation is to strike from the complaint any prayer for relief in the form of alimony, or, as stated in Craft, "to remove that issue from the case." But the essential basis of decision is not the absence of a prayer for alimony but rather the affirmative and legally sufficient assurance that relief in the form of alimony would be neither sought nor obtained. Any other holding would violate the first principle of procedural due process.

█ It is now well settled that it is competent for a husband and wife to negotiate an agreement "in adjustment of their respective interests" with reference to their marital and property rights and that such agreement may effectively limit or supplant law-imposed obligations. █ In various situations it has been recognized that "limitations embodied in their agreement constituted limitations upon the court's power to equate the support provisions of the decree with the law-imposed obligations as distinguished from the parties' contractual obligations." (*Plumer* v. *Superior Court,* 50 Cal.2d 631, 635-636 [328 P.2d 193]; *Plumer* v. *Plumer,* 48 Cal.2d

820, 825 [313 P.2d 549].) The binding effect of a wife's contractual waiver of alimony must be recognized unless appropriate procedures are invoked to avoid it. (*Adams* v. *Adams*, 29 Cal.2d 621, 628 [177 P.2d 265].) There may be a lack of jurisdiction although the court has jurisdiction over the subject matter and the parties in the fundamental sense. In many situations the court has no jurisdiction or power to act "except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Tabor* v. *Superior Court*, 28 Cal.2d 505, 508 [170 P.2d 667] ; *Abelleira* v. *District Court of Appeal*, 17 Cal. 2d 280, 288-289 [109 P.2d 942, 132 A.L.R. 715] ; *Vasquez* v. *Vasquez*, 109 Cal.App.2d 280, 283 [240 P.2d 319].)

 Although respondent has not argued the matter, we recognize that appellant's present attack upon the alimony provision of the judgment constitutes a collateral attack sustainable only by facts appearing from the judgment roll or by facts expressly admitted by the parties. "[I]n determining whether the order is void on its face we are limited to a consideration of matters which appears in the judgment roll or are admitted by the parties." (*Phelan* v. *Superior Court*, 35 Cal.2d 363, 372-373 [217 P.2d 951] ; *Thompson* v. *Cook*, 20 Cal.2d 564, 570-571 [127 P.2d 909] ; *Akley* v. *Bassett*, 189 Cal. 625, 639 [209 P. 576].) In the case at bar the essential facts appear from the judgment which expressly refers to, identifies and approves the property settlement agreement and incorporates all of its provisions with the exception of the waiver of alimony. The nominal award of alimony is expressly made in contravention of the agreement. These facts are fully detailed and confirmed in respondent's brief and are summarized therein as follows: "Recapitulating, the events were as follows : Wife consulted an attorney regarding divorce ; suit for divorce was filed wherein alimony was prayed for in wife's Complaint ; service thereafter was made on husband ; thereafter written Property Settlement Agreement was entered into by husband on the one side and wife represented by her attorney on the other, in which Agreement alimony was waived by wife ; thereafter no Amended Complaint was filed by wife ; default was entered by wife ; thereafter wife was granted an Interlocutory Judgment of Divorce wherein the Judge ordered husband to pay alimony of $1.00 per month to wife, despite the waiver of alimony in the Property Settlement Agreement. Thereafter, wife filed a Modification of this award by Affidavit and Order to Show Cause in which she asked that the $1.00

per month alimony be increased upwards due to the fact of her inability to continue her work because of her pregnancy.''

That portion of the order appealed from, to wit, the provision purporting to grant alimony, is reversed.

Fox, P. J., and Ashburn, J., concurred.