[No. 38231. Department One. June 9, 1966.]

HAROLD R. MESSERSMITH, *Respondent,* v. HELEN P. MESSER-
SMITH, *Appellant.*\*

*Wilson & Platt,* by *Frank B. Platt,* for appellant.

*Conniff, Harper & Taylor,* by *Richard J. Niichel,* for re-
spondent.

LANGENBACH, J.†—This is an appeal by the wife from a
judgment modifying a divorce decree. The principal ques-
tion is whether a provision in a settlement agreement, which
was approved and adopted by the divorce decree, was ali-
mony or a property settlement; if a property settlement, the
court was powerless to modify. The provision in question
provided that the husband was to pay the balance on a
real-estate contract for 40 acres, with 10 acres and a house
thereon to the wife, and with the remaining 30 acres to the
husband.

\*Reported in 415 P.2d 82.

†Judge Langenbach is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

When marital difficulties arose, the parties in March, 1963, signed an agreement purporting to settle their affairs; it was prepared by the husband's attorney. Essentially, the agreement provided for custody of the children, their support and a division of all the community personal property, and the following provision:

The parties are purchasing the following described real estate to-wit:

"The Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of Section Sixteen (16), Township Thirty (30) Range Six (6) West W.M. in Clallam County, State of Washington (EXCEPT portion thereof conveyed to Van E. Frederickson by deed recorded in Vol. 193 of Deeds at page 270, records of said county)"

under a written contract with one Charles C. Page and Mary Louise Page, his wife, dated August 5th, 1957, which is payable at the rate of $75.00 per month and *upon which there is an unpaid balance of some $4,500.00.*

*First Party [the husband] agrees to keep up and make each payment thereon until it is paid in full,* and pay real estate taxes and insurance premiums and otherwise perform the terms of said contract.

When such performance is completed, First Party shall then receive a deed and title to the South thirty (30) acres thereof, and Second Party shall receive deed and title to the North ten (10) acres which actually contains perhaps only 9½ acres because of road rights of way. And, if necessary, each party hereto agrees to execute and deliver such additional instruments as may be necessary to carry out this paragraph. (Italics ours.)

The agreement also provided that it was subject to approval by the divorce court.

Immediately thereafter, the husband commenced a divorce action. On June 25, 1963, a default divorce was granted. The decree provided that the husband was entitled to a divorce; that the four dependent children of their eight children were awarded to the wife with reasonable visitation rights to the husband who was ordered to pay support of $25 per month per child; and

That the Agreement dated March 22nd, 1963, by the terms of which the parties have made a division of their

community property, the original of which has been filed with the Court in this cause, is in due form, and fair and equitable, and that it is hereby approved by the Court; that pursuant thereto . . . .

The court then set forth in the same part of the decree the provision which is disputed herein and the provisions dividing the community personalty.

Three weeks after the divorce was granted, the wife remarried and moved from the house on the 10 acres.

About the time the divorce action was commenced, the husband refinanced the contract and borrowed an additional $800 which was financed through a mortgage. Of this $800, he used $300 as a down payment on a small house for his own use; the remainder was used to pay on pending bills. He has since sold 20 of the 30 acres for $8,000. (Nothing appeared as to whether the wife joined in the refinancing and mortgage. The decree referred to a contract and not to a mortgage.)

In June, 1964, the wife petitioned for an order modifying the support payments. At the contested hearing, the court modified the support to $35 per month for three children, as the oldest was then living with his father. (Nothing was said concerning the status of this property and its purchase. The respondent knew that the wife had removed from the premises soon after the divorce had been granted.)

Shortly before that hearing some of the buildings had been destroyed by fire. The wife collected the insurance proceeds and used them to improve the house. In modifying the support provision, the court noted that the house was in a rentable condition.

Prior to the husband's commencement of the current proceedings (started in December, 1964), he remarried. His allegation (material to this review) was that the agreement relating to the division of the 40 acres and payments for the same was alimony and should be modified on the ground of change in his financial status and circumstances. He had been employed in the same lumber mill for 17 years; he had missed $500 worth of work the preceding summer, and presently the mill was closed for an indefinite time.

The court modified the decree, finding that the husband's unemployment and arrears in support of $245 indicated his inability to meet the obligation of paying for the 40 acres; that the indebtedness ($5,255.23) as the balance due was alimony; that each should pay one half of it; that upon the failure of the wife to make her one half monthly payment, the husband shall have the right to make that payment and thereby have a first lien (subject to normal foreclosure procedures) upon the wife's 10 acres. The court also made minor findings as to visitation rights not involved here.

The husband testified that he intended to provide a home or support for the children when he agreed to pay the indebtedness on the 20 acres. He also admitted that she was to get the house and 10 acres when the final payment had been made. The appellant wife testified positively that nothing was said (at the time the agreement was executed) that this pertained to child support. She was to have the house and 10 acres absolutely and unconditionally.

The court believed the husband. (This judge was not the one who had made the original divorce decree.) In its oral opinion, the court stated:

[W]hether Mr. Messersmith should go on and pay out this mortgage or contract that is referred to, for a great many years—he has definitely indicated he did that solely to provide a home for the children, and I think that is true. I believe it is pretty understandable. If that was his motive, that was in the nature of support for the children.

Relying on the cases of *Boudwin v. Boudwin,* 162 Wash. 142, 298 Pac. 337 (1931); *Walls v. Walls,* 179 Wash. 440, 38 P.2d 205 (1934); *Valaer v. Valaer,* 45 Wn.2d 565, 277 P.2d 326 (1954); and *McFerran v. McFerran,* 55 Wn.2d 471, 348 P.2d 222 (1960), the court concluded:

The contract between the parties is not designated as a property settlement agreement anywhere. It is simply an agreement, a contract. *This decree doesn't say it was a property settlement agreement.* It seems to the court that equity, fairness and justice require that the 10-acre and 30-acre piece of land is firm and complete and can not be changed, but by the same rule it seems equitable and

fair, since this is not being used as a home, that the parties should bear the cost of the payments equally. I think they attempted to divide the property in equal value— while the acreage varies, the principal doesn't—and they should each be required to contribute their share to the payment left on this mortgage. (Italics ours.)

On appeal, the wife argued (1) the provision in the agreement relating to the 40 acres was a property settlement and not alimony, hence the court was powerless to modify that provision; (2) assuming the court had power, the husband failed to show a sufficient change in circumstances to warrant modifying the decree; and (3) in no event was the wife liable for any of the $800 indebtedness incurred by him for his own benefit after he commenced the divorce action. We do not consider the last two arguments, as we agree with the first.

██ The material part of RCW 26.08.110 provides:

Such decree, as to alimony and the care, custody, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require. Such decree, however, as to the dissolution of the marital relation and to the custody, management and division of property shall be final and conclusive upon both parties . . . .

Whether future payments provided for by a written agreement and adopted by the decree of a divorce court are alimony and support money or a property settlement depends on the circumstances and the intent of the parties. *Millheisler v. Millheisler*, 43 Wn.2d 282, 261 P.2d 69 (1953). Where, however, the contract is unambiguous on its face, the meaning of the contract is determined from its language and not from parol evidence. *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954).

[W]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. *Smith v. Smith*, 56 Wn.2d 1, 4, 351 P. 142 (1960).

The husband knew that the appellant had remarried and removed from the premises within 3 weeks after the divorce was granted. He knew she was not there when the first modification of support was entered; he knew that she received the insurance proceeds and made repairs to the buildings—all without any complaint or objection on his part. The status quo was never questioned until the present proceedings were instituted by him.

What was said in the *Millheisler* case, *supra*, at 288, is apposite here:

> The agreement is just what the parties stated it to be, a "settlement of their property rights." From an examination of the agreement, we can readily understand why appellant might now feel that he had been unduly generous, but it is his contract and the court should not make another one for him.

In *Walls v. Walls*, *supra*, the court said at 442:

> Considering the order as a whole, it clearly appears that the portion thereof of which appellant complains is an integral part of the property division made by the court. . . . The fact that the order recites that the award is for respondent's care and maintenance does not require a holding that this particular portion of the decree attempts to award alimony to respondent.

In the case at bar, viewing the agreement and the court decree, the husband's promise to pay the indebtedness on the 40 acres was an integral part of the property settlement. The court's statement that "this decree doesn't say it was a property settlement agreement" (italicized above) is wrong. The default divorce decree obtained by the *husband* specifically referred to the 40-acre tract and the obligation thereto as a "division of community property." Moreover, this reference was made in the same provision of the decree acknowledging the parties' agreement to divide the community personalty. The decree provided for support and maintenance in another paragraph. Further, the agreement acknowledged a $4,500 debt on the 40 acres and then provided that the husband "agrees to keep up and make each payment thereon until it is paid in full." On its face, the

obligation is absolute and without reference to support. We hold that the contract was unambiguous on its face.

The order of modification of the decree of divorce is reversed. The action is remanded to the trial court to reinstate the divorce decree of June 25, 1963, so far as it affects the property rights of appellant. She will be allowed her costs on appeal. It is so ordered.

ROSELLINI. C. J., HILL, OTT, and HALE, JJ., concur.