Dale H. HURD, Appellant (Defendant),

v.

Darla Mae NELSON, formerly Darla Mae Hurd, Appellee (Plaintiff).

No. 85–92.

Supreme Court of Wyoming.

Feb. 21, 1986.

David A. Hampton, Rock Springs, for appellant.

Dennis L. Sanderson, Afton, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, and URBIGKIT, JJ., and ROONEY, J. (Ret).

BROWN, Justice.

This appeal results from an order wherein the district court found appellant Dale Hurd liable to appellee Darla Mae Nelson (formerly Darla Mae Hurd) for appellant's breach of the parties' stipulation and settlement agreement. Such agreement was entered into between the parties pursuant to their divorce and made a part of the divorce decree. Appellant raises the following issue for our consideration:

"Whether the trial Court abused its discretion in awarding Plaintiff $12,500.00 for Defendant's breach of the Stipulation and Settlement Agreement for failure to remodel the parties' house and to complete the construction of the shop building for the Plaintiff."

We will affirm.

The parties were divorced on June 8, 1981. On May 22, 1981, the parties signed a stipulation and settlement agreement which was incorporated into the divorce decree. This agreement provided, inter alia, the following:

"4. The Plaintiff shall be awarded as her sole and separate property, free and clear of any claims or demands by the Defendant, the following described property:

"A. The physical possession of the house and real estate in Grover, Wyoming, for a period of ten (10) years or until the Plaintiff should remarry, whichever first occurs *at which time the house and real property shall be sold and the proceeds shall be divided equally between the parties.* The Plaintiff is hereby given the first right to purchase the Defendant's equity in the house and real property at a rate equal to the highest bona fide offer of a third party given to the parties. It is further understood and agreed that the Defendant will pay for the remodeling of the house to the Plaintiff's satisfaction at a cost not to exceed the sum of $10,000.00 and that this remodeling shall be completed no later than June 1, 1982. It is further understood and agreed that the Defendant shall pay for the completion of the construction of a shop and storage building which is planned to be erected upon the real property of the parties and that the Plaintiff shall be entitled to rent the space in this building on such terms and conditions as she deems advisable and that she may retain the rental income solely and separately for herself." (Emphasis added.)

Appellant did contribute between $2,000 and $3,000 for the remodeling of the house, as well as another $800 expenditure for basement carpeting. He testified, however, that he estimated it would take an additional $6,000 to complete the remodeling of the house.

Appellant contributed approximately $12,000 in materials for the construction of the shop, but did not pay for any labor, except $700 which was paid by appellant to a contractor who did some work on the shop. Members of appellee's church eventually erected the shop at no charge.

Appellee then filed a petition for order to show cause why the terms of the divorce decree should not be enforced.[1] Appellee sought to collect from appellant the costs of remodeling the house and the construction of the shop. After a hearing on the matter, the court rendered judgment finding, inter alia:

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

"* * *

"2. That judgment be entered against the Defendant in the sum of TWELVE THOUSAND FIVE HUNDRED DOL-

---

1. This case was filed as a petition for order to show cause why the terms of the decree should not be enforced. Therefore, the posture of this case is one to enforce a judgment, not one sounding purely in contract. We do not postulate how the result might differ, if at all, if the case was based solely on contract.

LARS ($12,500.00) for the Defendant's breach of the Stipulation and Settlement Agreement for failure to remodel the parties' house and to complete the construction of the shop building for the Plaintiff.

"* * *

"4. Judgment shall be entered against the Plaintiff in the sum of ONE THOUSAND ONE HUNDRED TWENTY-FIVE DOLLARS ($1,125.00) for Defendant's share of the rental value of the house from September 21, 1984 until February 21, 1985. The Plaintiff may continue to occupy the house until sold. Provided, however, she shall continue to pay the Defendant the sum of TWO HUNDRED TWENTY-FIVE DOLLARS ($225.00) per month as rental for the use and occupancy of the property of the parties.

"5. That the above payments of the parties shall be made through the Clerk of the District Court in and for the County of Lincoln, State of Wyoming.

"IT IS FURTHER ORDERED that the property of the parties be sold and the judgment amounts of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00) and ONE THOUSAND EIGHT HUNDRED NINETY-FOUR DOLLARS AND EIGHTY CENTS ($1,894.80), if not previously satisfied, may be deducted from the purchase price and paid to the Plaintiff. The ONE THOUSAND ONE HUNDRED TWENTY-FIVE DOLLARS ($1,125.00) owed by the Plaintiff to the Defendant shall be deducted and paid to the Defendant. The remaining balance of the proceeds from the sale of the property be divided equally between the parties.

"IT IS FURTHER ORDERED that each party shall pay for their own costs and attorney's fees for this hearing."

■ As previously noted, appellant asks whether the trial court abused its discretion in awarding appellee $12,500 for appellant's alleged breach of the agreement. We have oft stated our applicable standards of review. When reviewing cases on appeal, we accept the evidence presented by the prevailing party as true, leaving out of consideration entirely evidence presented by the unsuccessful party in conflict therewith, giving every favorable inference that fairly and reasonably may be drawn from the successful party's evidence. *Stockton v. Sowerwine*, Wyo., 690 P.2d 1202 (1984); and *Zanetti v. Zanetti*, Wyo., 689 P.2d 1116 (1984). Furthermore, a trial court's findings carry with them every finding of fact that fairly and reasonably can be drawn therefrom. *Zanetti v. Zanetti*, supra; and *Meeker v. Lanham*, Wyo., 604 P.2d 556 (1979).

Turning to the facts of this case, appellant admitted he was responsible for contributing up to $10,000 for the remodeling of the house. He further testified he had contributed between $2,000 and $3,000 toward such end, but he estimated the total cost of remodeling the house would be $6,000. And he admitted that he had not paid the full cost of remodeling up to $10,-000 as he expressly agreed to. Appellee testified there was still work to be done on the house to complete its remodeling. She also testified she borrowed $3,000 to pay a contractor for his work and appellant never paid her the $3,000 she borrowed.

Appellee testified she could not afford to pay for the cost of labor to construct the shop, even though appellant purchased the materials, so her church members eventually did the work for her free of charge.

In its closing remarks, the court stated the basis for awarding appellee $12,500:

"THE COURT: All right. The agreement in this case that the parties entered at the time of their divorce provided that the Defendant will pay for the remodeling of the house to Plaintiff's satisfaction, not to exceed $10,000. In that regard, Mrs. Hurd testified that she had spent $3,000 but the remodeling wasn't complete. Mr. Hurd testified that in his estimation, it would cost $6,000 to do not only what was complete, but what Mrs. Hurd had done up to this point. In other words, a total figure of $6,000.

"With respect to the shop, the agreement provided that the Defendant shall pay for the completion of the construction of a shop and storage building. Mr. Hurd testified that $12,000 was paid for materials; $700 for labor; and Mrs. Hurd testified that $12,000 for material—She agreed with that, but she disagreed with the labor, indicating that she felt the labor was worth some $12,000. The Court notes the appraised value of that shop and further notes that appraisals are guestimates at the time that they are made. Educated guesses, to be sure, but nevertheless, guesses. The Court also notes the fact that it's in dispute whether or not—the exact amounts, if any, which Mr. Hurd paid Mrs. Nelson in cash. The Court believes that the sum of $12,000 for materials is reasonable and the sum of $8,000 for labor is reasonable; making a total of $6,000 in remodeling for the house, $20,000 for the completion of the shop, a total of $26,000. Now, the testimony was by Mr. Hurd that he paid $700 in labor for the shop. That's not disputed. Mrs. Nelson admits $800 for carpet as part of the remodeling costs and the sum of $12,000 is admitted for materials, making a total of $13,500. That leaves a difference between the cost of remodeling and completion of the shop and the materials and labor of some $12,500, which Mr. Hurd owes Mrs. Nelson."

Appellant contends the court awarded appellee a windfall by awarding her damages for labor in the construction of the shop which was provided free of charge by members of appellee's church. It is generally recognized in tort law that compensation received by the plaintiff from a collateral source, wholly independent of the wrongdoer, cannot be deducted from the damages for which the defendant is liable. Such proposition is commonly referred to as the collateral source rule or doctrine.

"Under the collateral source rule or doctrine, which is a well-established rule in the law of damages, a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged. This is an established exception to the general rule that damages in negligence actions must be compensatory. * * *" 25 C.J.S. Damages § 99(a), p. 1011 (1966).

"In tort cases, the plaintiff may receive benefits from a third party who is in no way connected with the defendant, and receipt of these benefits from the source collateral to the defendant has the effect of lessening the financial losses which the plaintiff would otherwise have suffered. Thus, if the basic goal of tort law is only that of compensating plaintiff for his losses, evidence of these benefits should be admitted to reduce the total damages assessed against the defendant. * * *" 22 Am.Jur.2d Damages § 206, p. 286 (1965).

However, it is generally held that the collateral source doctrine is not applied to breach-of-contract actions unless the breach was of a tortious or willful nature. *United Protective Workers v. Ford Motor Company*, 223 F.2d 49 (7th Cir.1955); and *City of Salinas v. Souza & McCue Construction Company*, 66 Cal.2d 217, 57 Cal. Rptr. 337, 424 P.2d 921 (1967). The reason for such prohibition is because the collateral source rule is punitive, while contractual damages are compensatory in nature. As the court stated in *Patent Scaffolding Co. v. William Simpson Construction Company*, 256 Cal.App.2d 506, 64 Cal.Rptr. 187, 191 (1967):

" * * * The collateral source rule is punitive; contractual damages are compensatory. The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance. An application of the collateral source rule is particularly indefensible in a situation in which the injured party potentially could

make a treble recovery: one from his insurer, one from a defendant who has undertaken contractual liability for the loss, and one from the wrongdoer. * * "

Courts have been reluctant to invoke the collateral source rule in contract cases. *Daniel Construction Company, Division of Daniel International Corporation v. International Union of Operating Engineers, Local 513,* 570 F.Supp. 299 (D.C.Mo. 1983); *Grover v. Ratliff,* 120 Ariz. 368, 586 P.2d 213 (App.1978); *Amos v. Stroud,* 252 Ark. 1100, 482 S.W.2d 592 (1972). See also Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L.Rev. 741 (1964). As the Patent Scaffolding case points out, if the rule is applied to a breach of contract action, such would violate the contractual damage rule that no one may profit more from the breach of a contractual obligation than from its full performance.

■ Succinctly stated, an obligation in tort is not satisfied by payment from a collateral source while payment from a collateral source may satisfy a contractual obligation. In this case the obligation is not in tort nor strictly a contractual obligation, but rather an obligation imposed by a court order. The appellee's petition was based on the court's order rather than the stipulation. The stipulation of the parties merged into the court's order and took on greater dignity.

■ The problem before the court is whether or not an obligation under a court's order satisfied in part from a collateral source relieves appellant from payment pursuant to the order under circumstances wherein both appellant and appellee benefit from the resources of the collateral source.

The windfall here existed because of the gratuitous work of the church. Arguably, it could be allocated between appellant and appellee. However, because appellant failed to comply with the trial court's order he is in a poor position to ask for participation in this gratuity.

We have found no authority on the precise problem here. However, it would be unjust and depreciate from the dignity of a court order if we were to allow appellant to violate the court's order, and as a consequence profit from his derelictions.

"Courts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so. To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it and to exercise equitable control over such enforcement. Thus, a court of equity has inherent power to enforce its decrees. A court of equity retains and possesses the power to control the manner of the execution of its decree, and has the inherent right to modify, by a subsequent order, the manner in which it shall be enforced. * * * " 46 Am.Jur.2d Judgments § 898, p. 1032 (1969).

We think the court was correct in its enforcement of the previous decree. Having found no reversible error, the judgment is affirmed.

Affirmed.

URBIGKIT, Justice, dissenting, with whom ROONEY, Justice, joins.

I dissent from the majority decision which has the effect of awarding a judgment to an ex-wife for a cost which she neither incurred nor paid on an obligation derived from a property-settlement agreement incorporated in a divorce decree.

Increasingly, a dichotomy is being effectuated in the law whereby an agreement in contemplation of divorce assumes a transitory status afforded by no other type of agreement. Care should be taken, or we will have extended the modification attributes of alimony and child support as afforded by statute and case law to property settlement agreements with the resulting effect that no permanency or finality in any regard will exist. *Bjugan v. Bjugan,*

Wyo., 710 P.2d 213 (1985); *Pavlica v. Pavlica*, Wyo., 587 P.2d 639 (1978); *Finkbiner v. Finkbiner*, 340 F.2d 878 (10th Cir.1965); *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980); *Messersmith v. Messersmith*, 68 Wash.2d 735, 415 P.2d 82 (1966).

I cannot differentiate logically as to the essence of this agreement, whether it is enforceable by contempt or only attenuated with the normal attributes for contract enforcement by entry of a money judgment to be followed by execution. The essential difference is determined by the status of the contract provision as to whether it is alimony or property settlement and not the inclusion in the divorce result by separation agreement and merger into the decree. *Schaffer v. Schaffer*, 57 Or.App. 43, 643 P.2d 1300 (1982).

An agreement should not be changed in substantive terms by ancillary enforcement status.

" * * * The situation is not altered by incorporation of the agreement into a decree of court or by the merger resulting therefrom. [Citations.] The court looks through the decree to the agreement and determines the rights of the parties in this respect just as if there were no merger." *Kelley v. Kelley*, 151 Cal.App.2d 228, 311 P.2d 90, 92 (1957).

At issue in this case is the simple question: Did the husband, by property settlement agreement, undertake to pay not just cost but also for value added in the building-construction provision? Our quest is for the intention of the parties in making the agreement. 27B C.J.S. Divorce § 301(3), p. 415.

The two provisions of the agreement as are in haec verba also included in the decree are:

1. Evidence of cost of labor, except as it was derived from an appraisal and deduction of materials cost, was the following:

"Q. What do you figure that's worth [labor for shop cost]?
"A. [MRS. NELSON] I would guess in the range of 10, \$12,000."

Later testimony:

"[MR. HURD] A professional contractor could probably do the job in a day and a half for the sum of, probably, 2500 to \$3,000."

" * * * pay for the remodeling of the house * * * at a cost not to exceed the sum of \$10,000 * * *,"

and

" * * * pay for the completion of the construction of a shop and storage building * * *."

I would not find the legal issues of either collateral source or windfall to be involved. Reliance on those theories in this case is misplaced. At issue is only the within intention of the parties as derived from a contractual dispute. There is, however, a differentiation to be found between cost and value. I would interpret the agreement to contemplate that the husband undertook to pay for the *cost* and by contrast the trial court determined and now this court would assess liability under the agreement based upon *value* added.

At the trial, counsel talked about appraisal and "economic benefit" that should have been provided, and the court talked about what the labor was worth. Cost is what you have to pay; value is what you get. Cf. *Horseshoe Estates v. 2M Company, Inc.* Wyo., 713 P.2d 776 (1986).

The majority create an agreement that did not exist under the guise of a show-cause enforcement proceeding after the court had adopted the property settlement agreement in its entry of the original divorce decree.[1]

" ' * * * It must be construed and enforced according to the terms employed, and a court has no right to interpret the agreement as meaning something different from what the parties intended as expressed by the language they saw fit to employ.' "

Finally, at hearing conclusion:

"[THE COURT] * * * [T]he sum of \$8,000 for labor is reasonable."

This is the entire record upon which the decision was made and now comes to this court for consideration. Fortunately, we are not additionally required to consider the sufficiency of evidence for the determination of the amount of the judgment as that issue was not raised by appellant in this appeal.

*Thompson v. Thompson*, 170 Mon. 447, 554 P.2d 1111, 1114 (1976), quoting from 17 Am.Jur.2d Contracts, § 242, p. 627.

"That these agreements should be construed and interpreted as other contracts is no longer open to question. *Bergman v. Bergman*, 145 Fla. 10, 199 So. 920." *Underwood v. Underwood*, Fla., 64 So.2d 281, 287–288 (1953).

See also *Wilson v. Teacher Retirement System of Texas*, Tex.Civ.App., 617 S.W.2d 329 (1981); *McCray v. McCray*, Tex., 584 S.W.2d 279 (1979).

Whatever the ethics or morality concerns that may exist by virtue of the advantage to the ex-husband when Mrs. Nelson, in economic necessity, was given donated labor by her church, the majority is actually rewriting the agreement and the decree by providing for the payment of a nonexistent and a nonincurred cost. Do we determine liability in this case by the ascertainment of for whom the volunteer ·effort was afforded? Suppose that Mr. Hurd was a member of the Latter Day Saints Church and Mrs. Nelson was not, or that a couple of friends of Hurd had volunteered and with him the work was done: would the result then be different?

"As the English philosopher, Thomas Hobbs, said: 'The definition of injustice is no other than the not performance of covenant.'" *Brannon v. Adkins*, 7 Ohio Misc. 18, 216 N.E.2d 71, 73 (1966).

I would be more comfortable in this dissent if the words "cost of" had been included in the agreement provision "pay for the [cost of] completion," but that attribute is more suitably thereby defined as the intention of the parties than by rephrasing to state "pay for the [value of] completion," as is the premise of the wife's claim, first in the trial court and now resubmitted here. There is a difference between what is owed and what is enough in payment demand.

The particular concern raised by the majority encompasses a new legal theory that a contract which may be additionally enforceable by contempt has a character as to its intrinsic terms which is different than if inclusion in the decree had never occurred. Differing from both parties and the majority of this court, I would find that this is not a divorce "discretion" decision at this time on the appealed question. A contract principle is involved, and it should be a contract decision, without rewriting the contract to be something that it never was.

"Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally. Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution. *Bowles v. Bowles*, 237 N.C. 462, 75 S.E.2d 413 (1953); 24 Am.Jur.2d Divorce and Separation § 904 (1966); 27B C.J.S. Divorce § 301(3) (1959)." *Lane v. Scarborough*, 284 N.C. 407, 200 S.E.2d 622, 624 (1973).

See also *Wine v. Wine*, 14 Ariz.App. 103, 480 P.2d 1020 (1971); *Cochrum v. Cochrum*, 162 Cal.App.2d 825, 328 P.2d 1000 (1958); *McNeill v. McNeill*, Fla.App., 135 So.2d 785 (1962); *Vinci v. Vinci*, 131 Ill. App.2d 496, 266 N.E.2d 379 (1970); *Shultz v. Peters*, 223 Ia. 626, 273 N.W. 134 (1937); *Weeks v. Weeks*, Miss., 403 So.2d 148 (1981); *Wilson v. Woolf*, Texas Civ.App., 274 S.W.2d 154 (1954); *Kennedy v. Kennedy*, Texas Civ.App., 267 S.W.2d 245 (1954).

I would modify the judgment rendered in appellee's favor by reducing the judgment by $8,000, and would find the appellant liable to the appellee only in the amount of $4,500 on the contractual responsibilities which he assumed by property settlement agreement.

The judgment should be affirmed in all other respects.