[L. A. No. 23979.   In Bank.   May 4, 1956.]

THOMAS BURKE et al., Appellants, v. STANLEY M. CHROSTOWSKI, Respondent.

Harry M. Irwin for Appellants.

Joseph L. Graves for Respondent.

SPENCE, J.—Plaintiffs appeal from a judgment for defendant in an action between partners following the dissolu-

tion of the partnership. Their principal contention is that the evidence is insufficient to sustain the trial court's findings which resulted in the denial of their alleged claim of $2,500 upon settlement of the partnership affairs. ■ In determining this question, it is well settled that "an appellate court must accept as true all evidence tending to establish the correctness of the finding[s] as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is . . . to be resolved in favor of the finding[s]." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]; also *Patten & Davies Lbr. Co.* v. *McConville,* 219 Cal. 161, 164 [25 P.2d 429].)

In June, 1953, plaintiff Thomas Burke and defendant entered into an oral partnership for the operation of a restaurant business under the name of the El Adobe Coffee Shop in Monterey Park. They owned certain equipment therein, operated under a leasehold, had a checking account on which both signatures were required for the partnership checks, and they were to share equally in the business. There was no fixed term for the duration of the partnership. Prior to and on September 13, 1953, there were conversations between the partners about one buying out the other, but no agreement was reached. Then on the night of said date Burke disappeared with three days' unbanked cash receipts for the week-end, amounting to $550 or $600. Coincident with his departure, he sent to defendant an assignment of all assets and liabilities in the business "in consideration of monies received and continued payment of one hundred dollars per week to my wife, Doris . . . for the period of twenty-five weeks or whatever arrangement she cares to make until the additional sum of $2,500.00 is reached or paid." With such assignment, Burke enclosed a blank check on the partnership account signed by him, with a note stating: "You will find enclosed papers giving you the business and you can settle it with Doris. I have no intention of returning ever. Sorry. Tom. The signed check can be used to draw out any money in the name of the El Adobe Coffee Shop and then put in your name."

Immediately after receiving the signed check, defendant used it to withdraw the balance in the partnership account, $1,887.19, closed that account, and deposited the money in

a joint account with his wife. Thereafter he conducted all of the coffee shop business through such account, deposited some $2,000 of his own cash therein, and both he and his wife withdrew money therefrom for their personal needs. To clear his individual operation of the business, defendant promptly published a "Notice of Dissolution of Partnership," which declared that the parties had "by mutual consent" dissolved and terminated the partnership on September 14, 1953; that in the future the business would be conducted by defendant, who would pay and discharge all liabilities and debts of the firm and receive all monies payable to the firm; and that thereafter defendant would not be responsible for any obligations incurred by Burke in his own or in the firm's name. The notice was dated September 18, 1953, and was published on September 24, 1953. A few weeks later defendant had the partnership accounts and deposits with the utilities and the board of equalization, which had been made to establish credit and to carry on the partnership business, transferred to his own name.

Burke returned a week or ten days after his departure, but meanwhile his wife had not known of his whereabouts. He made no claim then nor since to the business or any partnership funds. Burke's only demand was that defendant pay $2,500 to his wife Doris, relying on defendant's acts in taking over the business as an acceptance of his (Burke's) offer to dissolve the partnership on the terms proposed by Burke. Following a second demand made on September 30, 1953, and defendant's repeated denial that any contract to pay this sum existed, the Burkes brought this action claiming that defendant was liable on the alleged contract. Defendant filed an answer and a cross-complaint, alleging that there was no contract; that Burke had withdrawn from the partnership; that defendant had published the notice of dissolution "to forestall further actions of [Burke] . . . having adverse effect on said restaurant business"; that an audit had been made and a copy thereof given to plaintiffs accounting for the operation of the business through September 13, 1953, which statement showed that Burke owed the partnership $802.56 and to which plaintiffs made no objection; and that plaintiffs were estopped by the conduct of Burke from claiming any right, title or interest in the increase in net worth of the business since September 14, 1953.

The trial court found that there was no contract to pay the $2,500 claimed by plaintiffs, although defendant on Sep-

tember 14, 1953, took possession of the equipment, merchandise, cash, credits and business of the coffee shop and has operated the business since that date. Judgment was for defendant on the complaint, but that he take nothing on his cross-complaint.

Plaintiffs' appeal presents the single question of whether defendant's acts in taking over the business, under the circumstances above related, created a contract between the partners, and obligated defendant to pay the sum of $2,500 to Doris Burke. The theories of plaintiffs and defendant sharply conflict as to what should be the correct deduction from the evidence. Plaintiffs maintain that defendant's acts compel the conclusion that he accepted the offer of his partner, thereby effecting a bilateral contract and causing the terms in the assignment to become defendant's obligations. They take the position that if defendant had not intended to accept the offer but preferred to maintain the partnership, he would not have taken over the partnership business in his own name, closed out all partnership accounts, or published his notice of dissolution "by mutual consent," indicating his assent to his partner's proposal. They further argue that inasmuch as no definite term for the continuance of the partnership had been fixed at the time of entering into it, a dissolution could be lawfully effected by either partner at any time (Corp. Code, § 15031, subd. (1b)); that Burke did that in forwarding his assignment to defendant "giving you the business and you can settle it with Doris," but such act of dissolution did not diminish his interest in the assets of the partnership "until the final closing up of its affairs" (*Zeibak* v. *Nasser*, 12 Cal.2d 1, 17 [82 P.2d 375]; see Corp. Code, § 15030.) Plaintiffs also argue that defendant then was bound to wind up the partnership affairs either (1) by rejecting his partner's offer, and thereupon applying the partnership property to discharge its liabilities and dividing the surplus between the partners (Corp. Code, § 15038), leaving defendant in the position of "a mere trustee" (*Ruppe* v. *Utter*, 76 Cal.App. 19, 25 [243 P. 715]; also *Vangel* v. *Vangel*, 116 Cal.App.2d 615, 628 [254 P.2d 919]; *Vangel* v. *Vangel*, 45 Cal.2d 804, 808-809 [291 P.2d 25]) or (2) by accepting the offer, thereby obligating defendant to pay the $2,500 as therein specified. Plaintiffs contend that defendant chose the latter course in concluding the partnership affairs and taking over the business himself, showing his compliance

with Burke's offer in every respect except in his failure to pay Mrs. Burke the $100 weekly installments for the total sum of $2,500.

On the other hand, defendant insists that the evidence sustains his position of consistent rejection of the alleged contract. He explains his acts of withdrawing the partnership funds and thereafter operating the business from his personal account as necessary steps in consequence of Burke's announced "intention of [never] returning" and the fact that withdrawals from the partnership account required the signature of both parties. Accordingly, he used the signed check forwarded by Burke to withdraw the balance in the partnership account, the sum of $1,887.19, and therewith paid off the accrued partnership bills, represented by outstanding checks totalling approximately $1,100 and a payroll of some $700. Defendant agrees that under the law either party could elect to dissolve the partnership, and that Burke had definitely so indicated in his notice to defendant, leaving defendant with no alternative but to accept Burke's decision in that regard. Therefore the notice of dissolution "by mutual consent" merely indicated that both partners had agreed to dissolve, but not that defendant acquiesced in Burke's "shotgun" terms coincident with his departure with the week-end receipts from the partnership business. Defendant further maintains that he never took the one unambiguous step that might have indicated acceptance of Burke's proposal, that is, payment or agreement to pay to Mrs. Burke the $100 weekly installment or the $2,500. Thus defendant insists that plaintiffs misconceive the alternative courses of action open to defendant following Burke's notice of his decision to withdraw from the partnership; that in addition to the two courses listed by plaintiffs, defendant had the additional one which he adopted—rejection of the proposed offer and consent to dissolution on terms to be thereafter determined, either through negotiations by the parties or by court decree.

The principal acts on which plaintiffs rely to support their theory of defendant's acceptance of the contract—defendant's use of the signed check to withdraw the balance in the partnership account and his publication of the notice of dissolution "by mutual consent"—were equivocal, capable of more than one construction, but readily support the trial court's finding that the parties had not entered into a contract. Rather, such acts may properly be viewed as reason-

able steps taken by defendant to forestall further adverse actions which might be undertaken by his partner, who had departed without notice, taking partnership funds without consent, leaving no address or method of contact, and indicating an intention never to return. In this connection, Burke testified that prior to his departure, he and defendant had discussed the question of dissolving the partnership, that defendant had not accepted his terms, and that he [Burke] had not taken the unbanked week-end receipts of the partnership business pursuant to any agreement with defendant. Following his return, Burke showed no interest in the partnership business or the accounting that defendant had submitted to him but simply stood on the proposition that despite his own inimical conduct in relation to maintenance of the partnership business, defendant's acts in protection of the business constituted an acceptance of his partner's arbitrary contract. Defendant's withdrawal of the partnership funds and their deposit in his personal account were of no personal benefit to him, since the evidence shows that such funds were used to pay off partnership liabilities. Accordingly, in response to defendant's cross-complaint the court adjudged that defendant had accounted for all of plaintiffs' share of copartnership money and that plaintiffs were estopped to assert any interest in values created by the partnership business after September 14, 1953. The choice of conflicting inferences to be drawn from the evidence was for the trial court to make, and its determination based on the inferences drawn will not be disturbed on appeal. (*Bruce* v. *Bruce,* 71 Cal.App.2d 641, 644 [163 P.2d 95]; *Maslow* v. *Maslow,* 117 Cal.App.2d 237, 243 [255 P.2d 65]; see also *Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602-603 [86 P.2d 829].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Dooling, J. pro tem.,* concurred.

Appellants' petition for a rehearing was denied May 29, 1956. Dooling, J. pro tem.,* participated in place of McComb, J.

*Assigned by Chairman of Judicial Council.