[Civ. No. 26818.   Second Dist., Div. Two.   June 28, 1963.]

HAROLD C. KAVALARIS, Plaintiff and Respondent, v. ANTHONY BROS., INC., Defendant and Appellant.

738

Julius A. Leetham and Anthony M. Wynn for Defendant and Appellant.

Hindman & Davis and Patrick Davis for Plaintiff and Respondent.

ASHBURN, J.—Plaintiff Harold C. Kavalaris sued appellant Anthony Bros., Inc., for negligent breach of contract to construct for him a swimming pool in his residence property. A few months after its completion the pool settled and cracked and leaked and had to be repaired and reconstructed to such an extent that the court awarded plaintiff damages in the sum of $7,847.33. Defendant appeals.

Its main contention, variously phrased, is that the evidence is insufficient to sustain the court's findings of negligent breach of contract on defendant's part. There is considerable conflict in the evidence but the uncontradicted evidence plus the portions of the conflicting proofs which are favorable to plaintiff's case and which must be accepted by the reviewing court as true (*New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987]) are now found to be sufficient to sustain the findings and judgment.

The pool was built in filled ground which was not adequately compacted, 90 per cent or better being the standard recognized by counsel for both sides of this case. Plaintiff called as a witness Mr. Clifford M. Hall, who was held by the court to be qualified to testify as an expert. Defendant produced Mr. Charles Mackintosh, who was stipulated to be a qualified expert.

Mr. Hall testified that the pool failed because, as he found when reconstructing it, the reinforcing steel rods which should have been covered completely with gunite (concrete) were in places lying on the ground with the gunite above them; that this was not good practice; that such condition has a tendency to crack the pool; that the concrete would be so weak without the reinforcing steel it could not hold the pressure of the water when the pool was filled; that if the steel were reinforcing the gunite the pool would not have cracked.

Mr. Mackintosh rejected this explanation of the damage to

the pool and said that the fill was not properly compacted, the ground had shifted and the cracks in the pool were caused by the ground movement; that the failure of the pool would not have occurred had the soil been compacted to the extent of 90 per cent or better. It is not accurate to say, as do counsel for appellant, that Mr. Mackintosh's testimony was uncontradicted. It was definitely in conflict with that of Mr. Hall upon the vital issue of the cause of the failure of the pool.

The testimony of both of these witnesses leaves plaintiff with a pool constructed in filled ground by defendant in a manner not adequate to resist the stresses and strains of loosely compacted soil. Mr. Mackintosh said that if called upon to build a pool in a loosely filled ground "the two recommendations that we make under such cases, one, either take the fill out and compact it, which is cheaper if there is available access and a place to pile the dirt; or if that is not possible or not economical, to use caissons. Q. Caissons down to the firm soil? A. Firm soil," and that caissons require heavier reinforcing rods and thicker gunite.

The parties contracted upon the basis of knowledge that the pool was to be built in filled ground. ▉ On the written contract there appear in the upper left corner and in the handwriting of Mr. L. Root, who negotiated and prepared the contract as defendant's agent, the words "Compaction report is with this contract—no extra charge for fill ground." This, of course, negatived the printed statement on the back of the contract saying: "6. The contract price is based upon the following mutual assumption of facts: (a) That the site is not fill ground, contains no rock formation or boulders and adequate bearing capacity." ▉ Mr. Mackintosh, before testifying, had examined a Smith-Emery Company report of October 31, 1955, upon field compaction tests made by it which showed 92.1 per cent compaction at one test site and 91.6 per cent at the only other one—probably the report mentioned in the contract. He said that the locations of the only two tests were outside the area of the pool and in that of the garage. One of them, No. 2, was 18 feet from the north edge of the pool.

Mr. Root testified that on his first visit to plaintiff's property he looked over the proposed site, noticed where the garage was built, walked out to the edge of the slope and looked down; that he was informed that it was all fill in there; that Kavalaris had pointed out the area where he wanted the

pool and said it was on a fill. He, Root, had asked for a compaction report "so that our engineering can check it." The specifications, which were drawn by defendant, contain references to filled ground: "Fill ground—compaction report from Smith-Emery Testing Lab." Respondent's brief says: "It is further undisputed that the compaction report so furnished, did not have a test drilling indicated for any of the area on which the swimming pool was to be constructed," and appellant does not take issue with this statement. The contract provides as a part of its "General Terms and Conditions": "1. Contractor guarantees the work performed by it against defects in material and workmanship for the period of one year from the date pool is plastered. . . ."

The court was warranted in holding that plaintiff did not make any representation that the Smith-Emery report covered the pool area or that it was correct; on the contrary the judge was justified in impliedly holding that the report was furnished for what it was worth and accepted as such.

█ With no further inquiry on the subject of the nature or extent of the fill or its compaction defendant proceeded with construction of the pool and failed to conform to normal and careful standards, whether the criterion stated by Hall or Mackintosh be applied to the work.

█ Defendant's plan for the pool says: "(1) Contractor shall verify all dimensions & conditions on job." This is but a recognition of a duty imposed upon defendant by applicable law, as is attested by *Firemen's Ins. Co.* v. *Indermill,* 182 Cal.App.2d 339, 341 [6 Cal.Rptr. 469]: "Defendants were under a duty to use reasonable care in the construction of the building. This duty included a reasonable examination of the soil condition where the excavations were to be made for the caissons, and reasonable inspection of the holes after the excavation had been made, in order to determine whether or not they had gone through the filled-ground and had penetrated the load-bearing ground for the required depth. (See *Dow* v. *Holly Mfg. Co.,* 49 Cal.2d 720 [321 P.2d 736].) The evidence establishes that the foundation caissons were constructed in a defective and insufficient manner and created a condition which caused the building to settle; that the defendants did not reasonably test the condition of the soil, nor inspect the holes for the caissons, nor attempt to determine whether the caissons were placed on proper load-bearing ground. Their negligence in these respects was clearly the proximate cause of the damage to the building."

Though defendant had both a common law duty and a contractual one to ascertain the bearing quality of the ground underlying the pool area, it took no steps to that end, constructed the pool in a manner which each expert says was improper and has no one but itself upon whom to place the blame and the consequent damages.

Completion and acceptance of the work did not exonerate defendant from liability. Aside from the point that this is a controversy between the two contracting parties, the rule now is that such completion and acceptance does not relieve the contractor of negligent construction. *Dow* v. *Holly Mfg. Co.*, 49 Cal.2d 720, 724 [321 P.2d 736]: "It should first be observed that the owner for whom the house was built by defendant general contractor had accepted the house and it had been transferred by him, with title finally vesting in the Dows. At one time this was an obstacle to recovery from the general contractor on the theory that there was no privity of contract between the contractor and the person injured, but it is no longer the law, as obviously, the problem presented is the same as where a manufacturer negligently manufactures an article which subsequently injures someone other than the purchaser of the article."

Appellant's contention that the real party in interest has not been joined in the action and hence the cause must be dismissed, cannot be sustained. Plaintiff was covered by insurance; the insurer paid him $5,805 under the policy and on account of the swimming pool loss; plaintiff signed and delivered to it a "subrogation receipt" dated November 7, 1958, containing this language: "Said company is hereby authorized and empowered to sue, compromise or settle in his name or otherwise, to the extent of the money paid as aforesaid." Plaintiff, who claims loss in excess of $5,805, prosecutes the action in his own name and for the benefit of the insurer as well as himself. This he has a legal right to do. (*Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347, 349 [170 P.2d 448, 116 A.L.R. 198].) See also, *Dibble* v. *San Joaquin L. & P. Corp.*, 47 Cal.App. 112, 117 [190 P. 198]; *Inglewood Park Mausoleum Co.* v. *Ferguson*, 9 Cal.App.2d 217, 218 [49 P.2d 305]; *Offer* v. *Superior Court*, 194 Cal. 114 [228 P. 11]; *Greco* v. *Oregon Mutual Fire Ins. Co.*, 191 Cal.App.2d 674, 687 [12 Cal.Rptr. 802].

Concerning the amount of damages, appellant says: "Another fascinating speculation of the Findings of Fact are how the Court arrived at damages in the amount of $7,-

847.33. No clue is given us either in Finding of Fact 7, or elsewhere. . . . It would seem difficult to ascertain from the Findings or Judgment just what was intended other than to benefit plaintiff in a good comfortable amount.'' Nowhere has counsel specified in what manner or to what extent the damages are too high. This cannot be dignified as an argument that the damages are excessive.

Other points raised by appellant are found to be without merit and require no separate discussion.

Judgment affirmed. Attempted appeal from order denying new trial is dismissed. ▮ No argument is made in support of appellant's alternative motion to vacate the judgment and enter a new and different judgment in favor of defendant, hence that appeal is deemed abandoned and is dismissed.

Fox, P. J., and Herndon, J., concurred.