[S. F. No. 22394. In Bank. Mar. 21, 1967.]

CITY OF SALINAS, Plaintiff, Cross-defendant and Appellant, v. SOUZA & McCUE CONSTRUCTION COMPANY, INC., Defendant, Cross-complainant and Appellant; AETNA CASUALTY & SURETY COMPANY, Defendant and Appellant; ARMCO DRAINAGE & METAL PRODUCTS, INC., Defendant, Cross-defendant and Respondent.

Donald A. Way, City Attorney, J. T. Harrington and William B. Boone for Plaintiff, Cross-defendant and Appellant.

Steel & Arostegui and Robert W. Steel for Defendant, Cross-complainant and Appellant and for Defendant and Appellant.

Thelen, Marrin, Johnson & Bridges as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Bradford, Cross, Dahl & Hefner and Loren S. Dahl for Defendant, Cross-defendant and Respondent.

PEEK, J.*—On these appeals the City of Salinas disputes findings that it misrepresented soil conditions to the damage of Souza & McCue Construction Company, its general contractor under a 1958 contract for the construction of a sewerline.

The action was commenced by the city for damages for Souza's alleged breach of the contract. The city also sought to recover from Souza's surety, the Aetna Casualty & Surety Company, and from Armco Drainage & Metal Products, Inc., a supplier of products to Souza. In a pleading denominated a cross-complaint, Souza set forth causes of action against the city for the recovery of the balance allegedly due under the contract, and a common count for goods and services. Souza also cross-complained against Armco, alleging that the latter guaranteed performance of piping it supplied and had promised to indemnify Souza for any losses. After the city answered the cross-complaint, the trial court refused to allow Souza to amend to include causes of action against the city for fraudulent misrepresentation and breach of implied warranty of site conditions. We granted a writ of mandate directing the trial court to allow the filing of such an amendment. (*Souza & McCue Constr. Co.* v. *Superior Court* (1962) 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338].)

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

At the conclusion of the trial the court found that the city materially misrepresented soil conditions by failing to inform Souza and other bidders of unstable conditions known to it, that the city intended that Souza prepare its bid based on such misrepresentations, that Souza reasonably relied on the misrepresentations in bidding on the contract, and that Souza should recover damages in the amount of $124,106, as proximately caused by the city's fraudulent breach of contract. All other claims for relief were denied. On this appeal, the city's main contention is that the foregoing findings, and the judgment based thereon, are not supported by the evidence.

There was considerable testimony that the city's chief engineer in charge of the project, and other officials involved therein, had knowledge, from their general knowledge of the city and from past project experience, of highly unstable conditions existing in the subsoils along the plotted line of the sewer. They knew that particularly difficult conditions were likely to be encountered in an extensive slough area which the route crossed. There was also evidence that the chief engineer directed an independent testing firm to take borings at preselected spacings and locations which avoided the area of the greatest unsettled conditions; that the method of taking the tests was misleading; that the reports of these boring tests were sent to bidders only a few days before the opening of bids, and that while it would have been proper practice to warn bidders of anticipated difficult conditions, the city officials did not do so.

█ It is the general rule that by failing to impart its knowledge of difficulties to be encountered in a project, the owner will be liable for misrepresentation if the contractor is unable to perform according to the contract provisions. (See *United States* v. *Spearin* (1918) 248 U.S. 132 [63 L.Ed. 166, 39 S.Ct. 59]; *United States* v. *Atlantic Dredging Co.* (1920) 253 U.S. 1, 11-12 [64 L.Ed. 735, 40 S.Ct. 423]; *Gogo* v. *Los Angeles Flood Control Dist.* (1941) 45 Cal.App.2d 334, 338, 341-342 [114 P.2d 65]; *A. Teichert & Son, Inc.* v. *State of California* (1965) 238 Cal.App.2d 736, 755 [48 Cal.Rptr. 225].)

In a factually similar case, the contractor encountered "unusual quantities of quicksand and extensive subsoil water conditions which had not been shown on the plans or specifications . . . information as to which, although known to it, had been withheld by the city." (*Valentini* v. *City of Adrian*

(1956) 347 Mich. 530, 533 [79 N.W.2d 885].) An award of damages was affirmed because, as stated at page 534: "The withholding by the city of its knowledge . . . resulting in excessive cost of construction, forms actionable basis for plaintiff's claim for damages."

Here, the city argues that provisions in the contract specifications requiring that the bidders "examine carefully the site of the work," and stating that it is "mutually agreed that the submission of a proposal shall be considered prima facie evidence that the bidder has made such examination," prevents a holding that the city is liable for the consequences of its fraudulent representation. ▆ However, even if the language had specifically directed the bidders to examine *subsoil* conditions, which it did not, it is clear that such general provisions cannot excuse a governmental agency for its active concealment of conditions. (See, e.g., *United States* v. *Atlantic Dredging Co., supra*, 253 U.S. 1; *United States* v. *Spearin, supra*, 248 U.S. 132; *Christie* v. *United States* (1915) 237 U.S. 234 [59 L.Ed. 933, 35 S.Ct. 565]; *A. Teichert & Son, Inc.* v. *State of California, supra*, 238 Cal.App.2d 736.)

The city further argues that because it entered into a modification of the contract after Souza encountered initial subsurface difficulties, Souza waived any claim going to fraudulent representations. The modification provided for the use of imported soils for side support and backing material, extended the time and adjusted the contract price. This came about when the parties became aware that the native soils would not support the sewerline. At that time Souza, however, was still not aware of the city's knowledge, nor did it have knowledge of its own, of the unstable conditions that might be expected to become increasingly grave as the line was further extended.

▆ The modification provided that "the parties . . . have finally decided to settle and compromise all of their differences and settle their dispute by this compromise agreement." The only dispute that had arisen at that point did not involve the considerable quicksand problems that Souza was to face during the remainder of the project, and concerned chiefly the inability of native soils to meet the compaction requirements of the original contract. That agreement could hardly be deemed to have settled a dispute over problems of which the contractor was not yet aware, and which, perforce, the parties could not have intended to include in the

agreement. (See *Lemm* v. *Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 482 [19 P.2d 785]; *Warfield* v. *Richey* (1959) 167 Cal.App.2d 93, 98 [334 P.2d 101].)

The modification agreement also provided that "the contractor expressly agrees that it has now fully, thoroughly, and completely examined, inspected, and familiarized itself with all matters and things relating to said contract, and the specifications thereof." At the time of the modification the pipeline had not yet begun to encroach upon the areas of greatest difficulty. The trial court found that nothing that Souza had done on the job prior to that date, and no independent information then available to it, disclosed to Souza or reasonably should have disclosed the existence of the extensive unstable conditions soon to be encountered.

■ The clause calling for and representing that the contractor had undertaken a full examination and inspection of "all matters and things relating" to the contract does not bar the contractor's claim of reliance. Reliance generally is a question of fact (see *Elkind* v. *Woodward* (1957) 152 Cal. App.2d 170, 179 [313 P.2d 66]), and any investigation undertaken may well have been imperfect *because* of the preexisting and continuing misrepresentation by nondisclosure. (See *Shearer* v. *Cooper* (1943) 21 Cal.2d 695, 704 [134 P.2d 764]; *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App. 2d 191, 203 [335 P.2d 995].)

The trial court could properly find that the misrepresentations of the city continued to be relied upon by the contractor during and subsequent to negotiations over the modification, despite the investigation clause, and despite the fact that the parties had engaged in a dispute involving the alleged falsity of another of the city's representations—the compactability of the native soils specified for use as backing material. (Cf. *Shearer* v. *Cooper, supra,* 21 Cal.2d 695, 703-704; *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co., supra,* 168 Cal.App.2d 191, 203.)

■ The exculpatory provisions in the modification agreement must fall for the same reasons that the provisions in the original contract could not excuse the fraud of active concealment. (See, e.g., *United States* v. *Atlantic Dredging Co., supra,* 253 U.S. 1.)

The city next argues that the trial court did not properly find the amount of damages, asserting that there was no competent evidence to support the amount found. ■ There is no requirement that the trial court set out either its computa-

tions, or the particular evidence upon which it may have relied in determining the amount of damages. (See *Gollaher* v. *Midwood Constr. Co.* (1961) 194 Cal.App.2d 640, 649 [15 Cal. Rptr. 292].) ▮ Nor is an appellate court concerned with the weight of testimony, particularly with reference to the amount of damages. (*Neel* v. *San Antonio Community Hospital* (1959) 176 Cal.App.2d 233, 235 [1 Cal.Rptr. 313].) ▮ ''The pertinent inquiry is whether there was substantial support in the evidence for the finding as to damages,'' (*Gollaher* v. *Midwood Constr. Co.*, *supra*, 194 Cal.App.2d 640, 649) and the appellant has the burden of demonstrating that the determination as to the amount of damages was erroneous. (*Vineland Homes, Inc.* v. *Barish* (1956) 138 Cal.App.2d 747, 760-761 [292 P.2d 941].)

▮ Souza introduced business records and testimony as to actual, reasonable costs, and estimated cost of the project prior to its discovery of misrepresented conditions. The city objected to the introduction of some of the evidence, but did not challenge the valuation of any particular item, and did not introduce any evidence of its own to controvert the valuations by Souza and its witnesses. As an '' 'appellate court must accept as true all evidence tending to establish the correctness of the finding[s] as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion' '' (*Burke* v. *Chrostowski* (1956) 46 Cal.2d 444, 445 [296 P.2d 545]), in the instant case the evidence introduced by Souza must be deemed sufficient.

▮ As to the actual damages, the trial court determined the fair and reasonable cost of the actual performance, and what it would have been in the absence of misrepresentation, and also determined that the difference was due to the misrepresentations of the city. To the fair and reasonable value of the services and materials the court added 10 percent thereof as compensation for the contractor's indirect overhead expenses, and in addition 15 percent of the total as compensation for the profit to which the contractor was deemed to be entitled. Such measure of recovery has been held proper in cases involving the misrepresentation of site conditions. (*Fehlhaber Corp.* v. *United States* (1957) 138 Ct.Cl. 571 [151 F.Supp. 817, 828-829]; *Pat J. Murphy, Inc.* v. *Drummond Dolomite, Inc.* (E.D. Wis. 1964) 232 F.Supp. 509, 526-527.)

However, for reasons which we now discuss the measure of damages was otherwise improperly determined.

During the trial the city asserted that evidence of damages should not have been admitted because discovery had been prohibited and evidence barred as to an alleged compromise agreement between Armco and Souza. That agreement is claimed to have compensated Souza in whole or in part for the damages it sustained due to the city's alleged breach. The city now maintains that recovery against it would amount to a double recovery for Souza.

When an injured party receives compensation for his losses from a collateral source ''wholly independent of the tortfeasor,'' such payment generally does not preclude or reduce the damages to which it is entitled from the wrongdoer. (See *Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 349-350 [170 P.2d 448, 166 A.L.R. 198]; see also *Lewis* v. *County of Contra Costa* (1955) 130 Cal.App.2d 176, 178 [278 P.2d 756].) It is the city's contention that because Souza cross-complained against both the city and Armco, alleging that each was liable for purported damages, any recovery by Souza from Armco would not be from a source wholly independent of the wrongdoer, and the so-called collateral source rule does not apply. (Cf. *Laurenzi* v. *Vranizan* (1945) 25 Cal.2d 806, 813 [155 P.2d 633].)

It is Souza's theory, however, that any recovery by it from the city will be for damages due to the fraudulent representation of conditions by the city, whereas the claim against Armco was not grounded in the city's misconduct. Although Armco was joined in the cross-complaint, it was sued on claims based on the breach of independent agreements between Souza and Armco, in that Armco as a supplier and subcontractor had furnished and supplied defective materials and workmanship in the laying of the sewer pipe, and has covenanted to indemnify Souza for losses resulting therefrom. The allegations of the cross-complaint against Armco, it is claimed, expressed completely severable theories of recovery and alleged wrongs completely different from those alleged against the city. (Cf. *Ash* v. *Mortensen* (1944) 24 Cal.2d 654 [150 P.2d 876].)

The collateral source rule has generally been applied in tort as distinguished from contract cases (see Maxwell, *The Collateral Source Rule in the American Law of Damages* (1962) 46 Minn.L.Rev. 669, 672, fn. 10; *United Protective Workers* v.

*Ford Motor Co.* (1955) 223 F.2d 49, 54 [48 A.L.R.2d 1285]),
for the reason that in a contract setting it is intended only to
restore the injured party to the position he would have occu-
pied in the absence of the breach (see *Blair* v. *United States*
(1945) 150 F.2d 676, 678), whereas such a policy would ne-
gate the deterrent effect of an award against a tortfeasor. We
have already held that the nature of the cause here asserted
by Souza is contractual. (*Souza & McCue Constr. Co.* v. *Supe-
rior Court, supra,* 57 Cal.2d 508, 511). However, the rule has
nevertheless been applied in certain instances where the claim
is basically in contract (*Gusikoff* v. *Republic Storage Co.*
(1934) 241 App.Div. 889 [272 N.Y.S. 77]; *Waumbec Mills,
Inc.* v. *Bahnson Service Co.* (1961) 103 N.H. 461 [174 A.2d
839]), particularly where the breach has a tortious or wilful
flavor (*Martin White* v. *Steam Tug Mary Ann* (1846) 6 Cal.
462 [65 Am.Dec. 523]; *Kavalaris* v. *Anthony Bros., Inc.*
(1963) 217 Cal.App.2d 737 [32 Cal.Rptr. 205]). In the in-
stant case the gist of the city's conduct sounds in deceit,
resulting in a fraudulent breach, and might, for some pur-
poses, have been treated as an action for relief grounded on
fraud. (*Gregory* v. *Spieker* (1895) 110 Cal. 150, 153 [42 P.
576, 52 Am.St.Rep. 70].) It is not necessary, however, that we
reach the issue of whether the fraudulent breach of a contract
in some settings would justify the application of the collateral
source rule (see *United Protective Workers* v. *Ford Motor
Co., supra,* 223 F.2d 49, 54; Note, 48 A.L.R.2d 1293), as we
are compelled to conclude that the rule is not applicable
against a public entity for the reasons which next follow. For
these same reasons we express no views as to whether Armco,
upon a full disclosure of all material facts, would be a collat-
eral source within the meaning of the rule in a setting where
it was applicable. (See *Anheuser-Busch, Inc.* v. *Starley,
supra,* 28 Cal.2d 347, 351.)

It is manifest that a public entity normally does not act or
make its functional decisions through the whole body of those
who may be deemed to compose it. Rather it necessarily acts
in the performance of its various functions through public
officials and representatives who have no greater proprietary
interest in the entity than does any citizen or taxpayer.
Should the conduct of such official or representative cause
damage to those with whom they are dealing the general rule
has been that the public entity would incur no liability, under
the doctrine of governmental immunity. ██ Although

many statutory and other inroads on this doctrine have been made (see *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal. 2d 211, 216-218 [11 Cal.Rptr. 89, 359 P.2d 457]), the levying of punitive damages against a public entity has not been authorized.[1] To do so would impose an unjust burden upon the innocent taxpayer without directly penalizing the wrong-doer. The punitive purpose would thus be frustrated. We have seen that the collateral source rule is punitive in nature (*United Protective Workers* v. *Ford Motor Co., supra,* 223 F.2d 49, 54; 2 Harper & James, Law of Torts, § 25.22, p. 1345; Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law,* 54 Cal.L.Rev. 1478, 1482-1484), and the theory of its application in the instant case would be that because the city's actions were wilfully fraudulent, a desirable punitive and preventative effect may be obtained by making the wrongdoer pay damages for an injury which may have been already compensated in whole or part. ▮▮▮ As we cannot impose on the city any measure of direct damages which are punitive in nature, it necessarily follows that we are foreclosed from doing it by an indirect and collateral route.

▮▮▮ Although the judgment herein fairly purports to represent the damages caused by the city's breach, nevertheless we cannot conclude that it represents the uncompensated damages to Souza, which generally is the proper measure of an award for breach of contract. (Civ. Code, § 3300; see *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 486-487 [196 P.2d 915].)

▮▮▮ A proper resolution of the legal relationships and concomitant obligations, as between Souza, Armco and Salinas can be reached only after full consideration by the trial court of all the evidence bearing on those questions and its legal

---

[1] A statutory expression of the then existing public policy is found in § 818, Gov. Code, effective shortly after the judgment herein. As a part of legislation extending the liability of public entities for the tortious conduct of public employees (Stats. 1963, ch. 1681), section 818 provides as follows: ''Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.'' (See also Gov. Code, § 825.) Section 818 is explained by the California Law Revision Commission on the ground that ''such damages are imposed to punish a defendant for oppression, fraud or malice. They are inappropriate where a public entity is involved, since they would fall upon the innocent taxpayers.'' (4 Cal. Law Revision Com. Rep. (1963) Recommendation Relating to Sovereign Immunity, p. 817.)

effect on the position of the parties. Accordingly, it was error not to permit disclosure of the Armco-Souza agreement.

The city's further contention that evidence as to the compromise agreement should have been admitted for the additional purpose of impeaching some of Souza's witnesses need not be considered in view of our conclusion that the nature of the agreement must otherwise be disclosed for a proper determination of the measure of damages.

While a redetermination of the measure of damages will necessarily require the refiling of Souza's cost bill, should an award be made in its favor, it is nevertheless appropriate that we now consider the city's claim that the court improperly granted Armco's, Aetna's and Souza's motion for relief for failure to file timely cost bills (Code Civ. Proc., § 1033), as such claim is applicable to the instant judgments in favor of Armco and Aetna and may be reasserted in connection with filing for the same costs as a part of Souza's new cost bill. Code of Civil Procedure, section 473, permits relief when a party demonstrates "mistake, inadvertance, surprise or excusable neglect." It appears that special hearings were had on proposed findings, conclusions, and judgment; that revised findings, conclusions and judgment were sent to the trial judge and all counsel on August 10, 1963; that responsible counsel, all being from different towns from that in which the court was located, expected to be notified when the documents were signed and filed; that they were not unduly concerned when no notice was received over the Labor Day holidays as they assumed the trial judge was on his annual vacation; that a telephone inquiry produced no response; and that on September 16, 1963, they received notices of a motion for a new trial, indicating for the first time that judgment had been filed, and that thereafter they diligently pursued their motion to have their defaults set aside.

While the foregoing matters are disputed and other facts were urged in opposition to the granting of relief, "It is for the trial court to determine all conflicts in the testimony or affidavits . . . and if there is a conflict the determination of the trial court is conclusive on appeal. . . ." (*Luz* v. *Lopes* (1960) 55 Cal.2d 54, 62 [10 Cal.Rptr. 161, 358 P.2d 289].) Under the circumstances the determination of the trial court was not beyond its discretion.

The city finally contends that the court erred in concluding that Armco was not liable to the city. There is suffi-

cient evidence in the record to support findings that the city's misrepresentations were the sole proximate cause of the failure of the project. Even if the alleged agreement between Souza and Armco could be construed as including, for the benefit of the city, a guarantee of the adequacy of Armco's piping for installation under soil conditions as represented, the city's misrepresentation of those conditions would relieve Armco. No error appears.

 Souza, as an appellant herein, contends that the trial court erred in refusing to award interest in the amount of damages found to be due. Although the damages must be redetermined, the contention now raised will bear on any new award. Souza claims that interest should run from September 18, 1959, the date of the amendment of Civil Code section 3287 allowing for the first time interest on an award against a public entity. That section provides in part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ." But where the amount of damages cannot be ascertained except by the resolution of conflicting evidence (see *Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380]), interest cannot be awarded under section 3287. (*Coughlin* v. *Blair* (1953) 41 Cal.2d 587, 604 [262 P.2d 305].) "Even if there is an express contract for the performance of services and the action is for a breach thereof, if, *because of defendant's prevention of performance,* the amount due cannot be computed by the contract terms, thereby rendering the damages uncertain and incapable of being made certain by calculation . . . interest is not recoverable . . . prior to judgment." (*Parker* v. *Maier Brewing Co.* (1960) 180 Cal.App.2d 630, 634-635 [4 Cal.Rptr. 825] ; see also *Kingsbury* v. *Arcadia Unified School Dist.* (1954) 43 Cal.2d 33, 43-44 [271 P.2d 40].) Souza completed the line on a date certain, but the line was not then acceptable. Although that performance may be deemed to have been prevented by the city's misrepresentations, the statute, as construed, does not allow for the recovery of interest against the city prior to judgment.

 Aetna, also an appellant herein, contends that the trial court erred in refusing to grant recovery for its attorney's fees, claimed under Government Code section 4200 et seq. The cited sections provide for the posting of a contrac-

tor's bond when work is to be done "for the State, or any political subdivision or agency of the State." (Gov. Code, § 4200.) It is further provided that in any action against the surety upon the bond, the court shall award reasonable attorney fees to the prevailing party. (Gov. Code, § 4207.) It is conceded, however, that the section applies to the state only, or any political subdivision of the state, and that a municipal corporation such as the City of Salinas is not within those categories. (See *Abbott* v. *City of Los Angeles* (1958) 50 Cal. 2d 438, 467-468 [326 P.2d 484].) Aetna seems to contend that, because the Salinas City Charter is silent on the question of contracting conditions for sewer installations the general laws of the state may apply, and the city thus falls within the class of a "political subdivision or agency of the State." The contention clearly is without merit.

The judgment is reversed only for the limited purpose of redetermining and awarding to Souza the amount of compensable damages proximately caused by the city's fraudulent breach of its contract with Souza, in accordance with the views expressed herein. On remand the trial court, as to that limited issue, is directed to take additional evidence, make whatever findings and conclusions it may deem proper in accordance with the foregoing views, and to make its award accordingly. Souza may file its cost bill for all proper costs, including both those costs heretofore incurred and those costs incurred on retrial of the limited issue. In all other respects the judgment is affirmed. Each party is to bear its own costs on this appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

The petitions of the plaintiff and cross-defendant and the defendant and cross-complainant for a rehearing were denied April 19, 1967.