The **DANIEL HAMM DRAYAGE COMPANY**, Appellant, Cross-Appellee,

v.

The **WALDINGER CORPORATION**, Appellee, Cross-Appellant.

Nos. 81–1514, 81–1532.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1981.

Decided Dec. 17, 1981.

John A. Templer, Jr., argued, Des Moines, Iowa, for appellee, cross-appellant; Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, Iowa, Stephen H. Rovak, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., of counsel.

Justin C. Cordonnier, Edwin L. Noel, argued, Thomas B. Weaver, St. Louis, Mo., for appellant, cross-appellee; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.

Before ROSS and STEPHENSON, Circuit Judges, and WOODS,* District Judge.

WOODS, District Judge.

This is a diversity case growing out of a dispute between two experienced contractors over a subcontract for a pollution control facility being built for the Caterpillar Company by a general contractor, W. E. O'Neill Construction Company at Mapleton, Illinois. O'Neill, who also had the general contract for foundry buildings at the site, subcontracted the mechanical and the pollution control portion of the undertaking to the Waldinger Corporation, an Iowa concern. Waldinger hired FMC Corporation to design and construct the pollution control equipment and at a later date hired Daniel Hamm Drayage Company, a Missouri Corporation, to rig and assemble the FMC equipment. The latter subcontract is the focal point of this controversy. Hamm's basic contention is that it was induced to enter into its contract with Waldinger for insufficient consideration by virtue of fraudulent representations made by Waldinger. Waldinger counterclaimed on the ground that certain work performed by Hamm was not in accordance with the contract and that corrective action was necessary. The trial judge [1] entered judgment in favor of Hamm in the amount of $111,998 on its complaint and in favor of Waldinger in the amount of $39,951 on its counterclaim.[2] Both parties were dissatisfied with this result. Hamm appeals contending that since the trial judge rescinded the contract and essentially based damages on a *quantum meruit* theory, overhead and profit should have been added to its recovery.

---

* Henry Woods, District Judge, Eastern District of Arkansas, sitting by designation.

1. The Honorable William L. Hungate, District Judge, Eastern District of Missouri.

2. In reaching his decision, Judge Hungate applied Illinois law. The conflict of laws issue is not raised in this appeal.

Hamm further contends that the court erred in making an award to Waldinger on its counterclaim. Waldinger cross appeals claiming that the trial court erred in its entry of judgment on Hamm's complaint.

The trial judge heard this case mainly *ore tenus* and made rather extensive findings of fact and conclusions of law, which are reported in a memorandum opinion in 508 F.Supp. 390 (E.D.Mo.1981). We affirm with one modification, which will be discussed, *infra.*

The crucial finding in the lower court is number 11, 508 F.Supp. at 393, that Waldinger's purchasing manager during the March, 1977 contract negotiations made a fraudulent representation to Hamm's vice president that all the FMC equipment would be on site by July 25, 1977, when he knew that such was not the fact.[3] Actually all the equipment did not reach the site until December, 1977, and Waldinger's executives knew that September, 1977 was the earliest date the entire equipment order would be supplied. The trial court found that Hamm relied on this fraudulent misrepresentation and entered into a contract with Waldinger based on its completion in early September. There were further findings that due to intervention of winter weather and the five-month delay in equipment supply, Hamm incurred expenses in the sum of $269,294 as compared to $157,296 paid on the contract by Waldinger. 508 F.Supp. at 394. The court entered judgment on Hamm's complaint in the amount of the difference between these figures.

■ A review of the record in this case has failed to convince us that Judge Hungate's findings as detailed above were clearly erroneous. He chose to accept the version of the contract negotiations as related by Hamm's vice president, which was flatly contradicted by Waldinger's purchasing agent and project executive. The credibility of the witnesses was for the trial court to determine.

■ Nor can we say that the trial judge's entry of judgment on the counterclaim in favor of Waldinger was clearly erroneous. Hamm left the job before its work was completed, and there was significant evidence in the record that some of its work was faulty and had to be replaced by another contractor. While the proof of damages on the counterclaim left something to be desired, we believe that there is evidence in the record to support Judge Hungate's finding of liability and damages in the amount of $39,950.

■ We agree with Hamm, however, that the trial court should have added profit and overhead to recovery on the complaint. Hamm adduced uncontroverted proof that 15% for overhead and 10% for profit is customary in the construction industry.

We have reviewed the Illinois cases dealing with recoverability of lost profits and have been unable to find a case substantially similar to that now before us. It is, however, clear that the Illinois courts would permit the recovery of lost profits where breach of contract has been established. *Illinois Structural Steel Corp. v. Pathman Construction Co.,* 23 Ill.App.3d 1, 318 N.E.2d 232 (1974); *Board of Education School District No. 90 v. United States F. & G.,* 115 Ill.App.2d 416, 253 N.E.2d 663 (1969). Further, where the complaint contains allegations of fraud, the Illinois courts have repeatedly held that the plaintiff is entitled to recover the benefit of his bargain. *Posner v. Davis,* 76 Ill.App.3d 638, 32 Ill.Dec. 186, 395 N.E.2d 133 (1979); *Patterson v. Nick,* 17 Ill.App.2d 414, 149 N.E.2d 786 (1958); *Classic Bowl v. AMF Pinspotters,* 403 F.2d 463 (7th Cir. 1968).

The practice of awarding lost profits in cases of fraud is reviewed and approved by Professor Dan Dobbs: "Special damages resulting from fraud, like other special damages *must be proven with a reasonable de-*

---

**3.** The trial court also found that Waldinger's purchasing manager misrepresented the fact that FMC would have an erection supervisor on the job and that the equipment components would be match marked. 508 F.Supp. at 393.

These findings apparently played only a minor role in the decision of the District Court. The representations concerning the delivery date was the crucial factor in Judge Hungate's decision.

gree of certainty. Here, as in many other situations, items such as lost profits may be recovered where the evidence permits reasonable conclusions about the losses, but not where it is mere speculation." Dobbs, *Remedies*, § 9.2 at 601 (West Publishing Co. 1973).

The approach set forth by Dobbs was followed by the California court in *City of Salinas v. Souza & McCue Construction Co.*, 66 Cal.2d 217, 57 Cal.Rptr. 337, 424 P.2d 921 (1967). In that case the contractor cross-claimed against the City of Salinas for fraudulent misrepresentation and breach of implied warranty of site conditions. The trial court found that the city had misrepresented soil conditions and in computing the damage award included certain amounts for overhead and lost profits. The Supreme Court of California specifically approved this award saying:

> As to the actual damages, the trial court determined the fair and reasonable cost of the actual performance, and what it would have been in the absence of misrepresentation, and also determined that the difference was due to the misrepresentations of the city. To the fair and reasonable value of the services and materials the court added 10 percent thereof as compensation for the contractor's indirect overhead expenses, and in addition 15 percent of the total as compensation, for the profit to which the contractor was deemed to be entitled. Such measure of recovery has been held proper in cases involving the misrepresentation of site conditions.

57 Cal.Rptr. at 341, 424 P.2d at 925; *see also Lester N. Johnson v. City of Spokane*, 22 Wash.App. 265, 588 P.2d 1214 (1978), and *Continental Casualty v. Schaefer*, 173 F.2d 5, 8 (9th Cir. 1949).

A similar result was reached in *Pat J. Murphy, Inc. v. Drummond Dolomite, Inc.*, 232 F.Supp. 509 (E.D.Wis.1964). There the plaintiff contractor brought suit for misrepresentation of subsoil conditions and breach of implied warranty. The court held the proper measure of damages to be as follows:

The measure of recovery applicable to breach of implied warranty and misrepresentation is stated in the Hersey and Knapp cases as reasonable damages compensatory of the cost of the work of which the owner received the benefit, over and above the amount paid by the owner.

232 F.Supp. at 526. In computing the actual amount due the plaintiff, the court added 5.4 percent as profit on the total costs of the project. "We have held that in certain situations profit and overhead may be recovered on a *quantum meruit. Arthur N. Olive Co. v. U. S.* [1 Cir.], 1961, 297 F.2d 70." *Ferber Co. v. Ondrick*, 310 F.2d 461, 466, footnote 4 (1st Cir. 1962).

Even though there are no Illinois cases dealing precisely with this issue, we believe that the Illinois court would agree with those cases from other jurisdictions which permit the recovery of lost profits. This approach is sound whether the complaint alleges fraud or breach of contract. Indeed, it is particularly applicable where allegations of fraud have been substantiated. Certainly, where the defendant has been found guilty of fraudulent conduct, he should not be allowed to retain benefits for less than he would have had to pay had the services been performed absent the misrepresentations.

We modify the decision of the trial court to the extent that profit and overhead should be added to Hamm's expenses in computing recovery on the complaint. The expenses were computed at $269,294. Addition of profit and overhead results in a figure of $336,618.50. After credit for Waldinger's payments, the amount of the judgment on the complaint should have been $179,321.50 instead of $111,998. We modify the judgment in this regard. In all other respects it is affirmed.