George ROBINSON and Carol
Robinson, d/b/a Loadpower
of Denver, Plaintiffs,

v.

HIGHWAY MANAGEMENT SYSTEMS,
INC., et al., Defendants.

No. 82–1118–CV–W–9–6.

United States District Court,
W.D. Missouri, W.D.

April 26, 1984.

Joseph Colussi and Mark Bluhm, Gage & Tucker, Kansas City, Mo., for plaintiffs.

Karl H. Timmerman, Jerry Bryant, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER DIRECTING ENTRY OF FINAL JUDGMENT

SACHS, District Judge.

For reasons stated in the court's order of April 19, 1984, and in further oral statements on the record, judgment in favor of plaintiffs and against defendants Highway Management Systems, Inc., Highway Power, Inc., William McMaster, Ali A. Attayi, and Wallace Koenning was entered as of that date. Defendants have defaulted in their obligations under court orders, have not supplied discovery materials, and have made it impossible to try the liability issues on the scheduled trial date. A hearing to assess damages was held on April 23, 1984. Counsel for defendants appeared and cross-

examined witnesses, but presented no rebuttal evidence as to damages.

Plaintiffs withdrew their claim for punitive damages, withdrew their jury demand, and the case was heard by the court without objection. Plaintiffs also dismissed without prejudice their claim against defendant Dailey.

Confession of judgment in the amount of $35,000 (the amount of the prayer) was tendered at the beginning of the hearing. Plaintiffs declined to limit their claim to that amount, however, and offered proof of damages in excess of said sum.

Plaintiffs presented two questions, combining issues of fact and law, which the court will rule in favor of defendants. The ruling will be based essentially on an insufficiency of evidence.

First, plaintiffs contend they are entitled to recover for mental distress and suffering caused by their having been fraudulently induced to enter into a franchise-type agreement with Highway Management Systems, Inc., to serve as a Colorado outpost of a supposed nationwide computer-supported business network, engaged in matching loads with available trucks. Neither the computer system nor the nationwide network were as developed or as near completion as plaintiffs were led to believe. Plaintiffs found the franchise to be essentially inoperable.

The most definitive word on emotional distress as an element of damages in a fraud case under Missouri law is the Eighth Circuit rejection of such a claim in *Walsh v. Ingersoll-Rand Co.,* 656 F.2d 367, 370–1 (8th Cir.1981). It is arguable, however, that the Missouri law is liberalizing, under the doctrine of *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–3 (Mo. banc 1983), which judicially repealed the "impact rule" for tort recovery in personal injury claims. *Bass* requires, however, that a "medically

diagnosable" mental trauma occur, of "sufficient severity so as to be medically significant."

The court understands that Judge Stevens extended the *Bass* rationale to a fraud claim in the celebrated Christine Craft television litigation, and it is certainly arguable that *Bass* logically supersedes the *Walsh* restriction. In the present case, however, there was no medical testimony or even a hearsay reporting of medical consultation and diagnosis that complies with *Bass.* While Mrs. Robinson testified that she had visited an internist, there was no evidence that a "medically significant" mental health problem was discovered, or that the visit had a causal connection with defendants' actions. Although some level of emotional distress may be fairly inferred, no recovery under the *Bass* rule is authorized under the facts, and, in any event, the monetary value of the distress would doubtless be quite limited. Compare *Wells v. Holiday Inns, Inc.,* 522 F.Supp. 1023 (W.D.Mo.1981) where plaintiff sought recovery for mental distress caused by breach of a contract for hotel reservations.

Plaintiffs' second claim that will be rejected is the "benefit of the bargain" claim for lost profits. Such a claim is an alternative to all other damage claims advanced by plaintiffs. *Central Microfilm Service v. Basic/Four Corp.,* 688 F.2d 1206, 1220 (8th Cir.1982).[1] In the present case, there were projections or estimates of future gross income from a successful franchise operation, but no showing what the net income would have been, and no evidence that similar businesses have in fact enjoyed such revenues. Evidence of the profit and loss history of similar businesses (or other evidence of equally persuasive character) is needed to avoid rejection of the claim as speculative. *Crues v.*

---

**1.** The "federal rule" is said to preclude "benefit of bargain" recovery in fraud claims, particularly where, as here, if plaintiffs had known the truth they would doubtless not have gone forward but would simply have escaped from their "out of pocket" losses. *Madigan, Inc. v. Goodman,* 498 F.2d 233, 239–240 (7th Cir.1974). While there may be much to be said for the

*Madigan* approach, the Eighth Circuit has clearly recognized "benefit of bargain" damages in Missouri fraud cases. See also *Daniel Hamm Drayage Co. v. Waldinger Corp.,* 666 F.2d 1213 (8th Cir.1981) (allowing lost profits in a fraud case, under Illinois law, where established with " 'a reasonable degree of certainty' ").

*KFC Corp.*, 546 F.Supp. 217, 219 (E.D.Mo. 1982). Lost profit testimony is often currently rejected in Missouri fraud cases where considered "speculative." E.g., *Essex v. Getty Oil Co.*, 661 S.W.2d 544, 552 (Mo.App.1983). The same cautious approach is used in breach of contract cases. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 298–9 (Mo.App.1983). Plaintiffs' proof in this case will therefore be rejected as speculative, insofar as plaintiffs project a $14 million cumulative (gross) earnings theory for the years 1983–2005. P.Exh. 31b.

■ Plaintiffs' claim for expenses and losses in reliance on the defendants' representations is better grounded in demonstrated fact. The court finds the following losses have occurred:

| | | |
|---|---|---|
| 1. | Fees paid for a worthless franchise | $16,000 |
| 2. | Loss on residence (costs of $125,500 less sales price of $115,000) | $10,500 |
| 3. | Moving expenses | $ 3,116 |
| 4. | "Start-up" costs | $ 5,364 |
| 5. | Lease expense | $ 3,200 |
| 6. | Furniture and equipment, less resale value | $ 2,100 |
| 7. | Operating loss | $ 374 |
| 8. | Retirement benefit loss | $15,315 [2] |

Judgment against the named defendants, jointly and severally, in favor of both plaintiffs will be entered in the sum of $55,969.00. SO ORDERED.

■ There remains the claim of George Robinson for his lost earnings. The appraisal of this claim is the most difficult aspect of the case. Lost future earnings can rarely be computed with much certainty. See *Kelly v. Illinois Central Gulf Railroad Company*, 552 F.Supp. 399, 402 (W.D.Mo.1982). In personal injury cases there is, however, often a modicum of assurance that a continuing physical disability will reduce earning potential. Where, as here, there is no disability but simply a temporary disruption in a career, long-term injury to earning power may be doubted

and measurement of such a hypothetical injury may become so dubious as to be called speculative. Compare *Albrecht v. Herald Company*, 452 F.2d 124, 127–131 (8th Cir.1971).

■ In the present case, George Robinson's earnings as a salesman for IBM rose and fell. A general upward trend has some historical support, but has no guarantee of permanence. During the final ten years of his employment, Robinson's income increased over the past year on five occasions and decreased on four. Significant increases (over $10,000 annually) occurred in 1979 and 1982 and a significant loss occurred in 1978. Treating 1982 income as representing an uncharacteristic bulge rather than a permanent springboard, a conservative average income over the final three years of service would be approximately $66,000. Robinson's 1983 income was some $41,900. A $24,000 loss of income for 1983 may reasonably be inferred.

While the $24,000 loss for 1983 will be allowed, as proximately caused by the misrepresentations, the court is not satisfied that plaintiff has probably suffered a permanent setback in income to the approximate level he had some five years before leaving IBM (1978 income was $43,440). The 1983 income was reduced by at least one month's complete unemployment and represents two jobs. If plaintiff becomes dissatisfied with his future prospects on his current sales job, he will doubtless again seek greener pastures. Plaintiff has the same capability as he had before leaving IBM and it is speculative, though possible, that his long-run future is comparatively bleak considering IBM's status in the business community. The court is not sufficiently persuaded to accept the tabulation of plaintiff's prospective "likely earnings 1983–2005" (P.Exh. 31b). The tabulation of prospective "IBM earnings 1983–2005" (P.Exh. 31c) is also doubtfully persuasive.

---

**2.** It is arguable that Mrs. Robinson should not share in this claim; however, she had survivorship benefits under the program her husband had with his former employer, IBM. The benefits were surrendered in reliance on the representations for which defendants are responsible. In the absence of further analysis by the parties, this sum will be included in the joint judgment.

The court is unable to construct its own future earnings theory on any basis that would not be speculative.[3]

In addition to the joint judgment for plaintiffs, in the amount of $55,969, heretofore ordered, a separate judgment for lost earnings in favor of George Robinson and against the named defendants, jointly and severally, in the amount of $24,000 will be entered. SO ORDERED.

---

**3.** Plaintiff himself apparently did not anticipate any long-term injury to his earning power, when he filed suit in December, 1982. Total damages were allegedly in excess of $35,000, but the prayer was for $35,000. While plaintiff de-

nies having reviewed the complaint, it is probable that the prayer in the complaint was either derived from plaintiff's statements to counsel or was at least discussed with plaintiff.